**Kristen Joseph,**
In Pro-Per/Pro Se
5434 Premiere Ave.
Lakewood, Ca 90712
Tel. (562) 314-8111
kristen@kdotphotography.net

**For Plaintiff**

FILED
CLERK, U.S. DISTRICT COURT

AUG 1 7 2021

CENTRAL DISTRICT OF CALIFORNIA
BY ___KWU___ DEPUTY

# District Court of the United States
# Central District of California
# Los Angeles Division

Kristen Joseph,

        **Plaintiff.**

v.

Superior Court of California Los Angeles Dependency Division, Los Angeles County Department of Child and Family Services, Los Angeles Dependency Lawyers,

        **Defendant(s).**

Unknown Doe Clerk(s),

        **Defendant(s).**

Case No.: 2:21-CV-06654-SVW-ADS

**A Complaint for:**

**1) Preliminary TRO**

**2) Injunctive Relief**

**3) Declarative Relief**

**4) Damages**

**5) Other Relief**

To the above named Court and all Parties of Interest:

## I. Preliminary Statement

1.    This case is based upon a dependency case in which defendants Los Angeles Department of Child and Family Services (LA DCSF) brought against Plaintiff without just cause and false statements and innuendo to bring such a case. The case is baseless and plaintiff believes it was simply done to garner money in the form of grants for taking the child under false cause.

2.    On or about February 20, 2021, defendants removed Plaintiff's child without a warrant and began the process of terminating Plaintiffs Parental Rights.

1

Complaint for Injunctive Relief and Damages

3.     Plaintiff was assigned various attorneys by Los Angeles Dependency Lawyers, a law firm that apparently handles the defense of these types of cases. These lawyers are supposed to be experts of these types of cases and were appointed to represent my interests.

4.     These attorneys did not fight my case at all. They did not challenge the evidence that was presented against me. They did not call for evidentiary hearings challenging the evidence on the record and the evidence was false. They did not confer with me before the case at any point or explain what was going on. They effectively hoodwinked me and waived my rights without consulting me. All they did do was ask that I get visitation which I did not even get.

5.     Plaintiff sent numerous emails, letters and emails to the attorneys who did not act in Plaintiffs behalf. At no point did they challenge the evidence before the court and against plaintiff by holding evidentiary hearings or challenging the evidence. **(See exhibit A)**

6.     Plaintiff has disabilities that are cognizable under the American's with Disabilities Act and which include Attention Deficit Disorder, Anxiety and others and I applied for an ADA Advocate, Reasonable breaks or recesses during stressful times. The entire case was stressful as I was afraid that I would lose my son. I applied first in July 6  and under state Law, the Court has 5 days to respond. It never did and I was not given my needed accommodations. I made the motion more recently and it was still ignored. My son has several disabilities as well. **(Exhibit b)**

7.     I was taunted by the Judge Tamara Hall that I didn't have anyone to be at the hearing with me. It was deeply bothered by the closed nature of these hearings and asked that they be open to the public. This went unanswered. I also felt the entire process was unfair with just a judge to make each determination of loss of my rights from the loss of my ability to have possession of my child to the loss of my right to decide the how to educate my son. These were all done by a judge in a closed hearing where friends and family could not come to witness.

8.     On or about July 27, 2021, Defendants filed for an exParte Motion to garner a restraining order against Plaintiff and the hearing was to be on July 30, 2021. Plaintiff had prior alerted her attorneys and the court that she works as a Wedding Photographer and cannot ignore her contractual obligations to photograph these once in a life time moments that cannot be moved

1    due to me. Also, there was no exigency. I did not have possession of my son since he was taken.

2    **(Exhibit c)**

3    9.       On July 29, 2021, Plaintiff prepared several papers to be filed in the dependency case

4    This includes a substitution of attorney so I could represent myself as my attorneys were not

5    representing me, a motion for continuance as I would then need time to prepare an opposition,

6    and an objection to the hearing based on the fact that it was hyper fast tracked, there was no

7    exigency, and no facts were not plead to suggest that a hearing had to be heard in such a short

8    time. Plus, I was never served the exParte, I was only told about it and needed to alert the court I

9    was going to represent myself and I could not be there.

10   10.       The next day, a friend went to serve these documents and I went to work. By information

11   and belief from the person who went to serve my documents. The clerks would not file it. She

12   went to the hearing room, even though she knew that she could not enter the private Dependency

13   Courtroom (Private to keep the public from seeing what goes on in there) and she knocked on

14   the door. The bailiff answered. She could not enter. She gave the filings to the bailiff and told

15   him that he needed to file and did, but judge Tamara Hall prevented it and then recused herself.

16   11.       The case was transferred to a Commissioner Byrdsong. It appears that none of the

17   documents were filed. It appears the new attorneys did not object to the hearing or get

18   themselves better acquainted with my case nor conferred with me as to whether I would accept a

19   Commissioner in lieu of a full judge. The Commissioner then terminated Plaintiffs Educational

20   rights to her son, granted a TRO without evidence and set a hearing for August 19th 2021.

21   12.       Due to the several severe violations of due process, equal protection, substantive due

22   process and the flimsy methodology the Court has used to sever the rights of Plaintiffs parental

23   rights, and the fact that the attorneys appointed to represent me have effectively waived the

24   prosecutions duty to prove up their case and thus has lost rights to her child including possession

25   and the right to raise, rear and up bring her son and will the way it is proceeding, will likely and

26   will reasonably and foreseeable lose all her parental rights, Plaintiff moves this court to grant a

27   TRO against the LA Dependency Court, LA DCSF and  to help to preserve these rights because

28   they me be permanently lost due to the actions that have occurred. No reasonable person should

trust what I have seen and have no reasonable hope that anyone in this process will sober up. This is an absolute travesty of justice and I ask for a hearing to review this all.

## II. Jurisdiction

13.    This action arises under Title 42 USC 1983.  Jurisdiction is conferred upon this Court by Title 28 USC 1331 and 1343.  The unlawful acts and practices alleged occurred in Solano County, State of California, which is within this Judicial District. This Court has jurisdiction in the matter because jurisdiction is founded on 28 U.S.C.§§ 1331 and 1343 as well as 42 U.S.C.§1983, §1985, §1986 and §1988.

14.    This Court has supplemental jurisdiction over Plaintiff's pendent State claims pursuant to 28 U.S.C. 1367(a) because they are part of this same case and described by Plaintiffs' Federal claims and such claims may be raised concurrently in Federal Court.

## III. Venue

15.    Venue is proper under 28U.S.C. §1391(b) because the underlying acts and injuries upon which the present action is based upon occurred in the Central District of California.

## IV. Parties

### A. Plaintiff

16.    Plaintiff Kristen Joseph (or "Joseph" or "Kristen") is a disabled citizen of the United States with PTSD and a mother of her son W. J. who has been taken from her by Defendants. At all times herein mentioned Plaintiff is a resident of the City of Lakewood, California and a resident of the Central District of California and a member of a "class of one".

### B. Defendants

17.     Los Angeles County Superior Court, Dependency Division (LA SCDD) Commissioner Byrdsong, who is the current presiding judicial officer on this case.

18.    Los Angeles County Department of Child and Family Services (LA DCSF) and the attorneys that work for or are agents of or represent this agency, which brought this action.

19.    Los Angeles Dependency Lawyers (LA DL) who appear to be a law firm made up of several attorneys and supervising attorneys who were appointed to represent me.

20.    Unknown Doe Clerk at the LASC.

21.     Unknown Does who are not named now, but will be when I am able to learn their names and amend these pleadings for future cases.

22.     All Defendants named herein either living within the Central District or through their employment work within the Central District of California.

### V. Facts Common to All Claims for Relief

**A. In General**

23.     I have been the mother of W. Joseph and his father has not been involved in his life.

24.     Wrigley has several disabilities that require a lot of work and I did my best.

25.     I have always been a good mother, was able to keep a home and roof over our head, food on the table and did my best to raise my son well.

26.     I enter the following facts into this record as they happened and support such as best I can. I've asked for the transcripts to my hearings for months, but they have not turned over such.

**B. Medical Incident of my Son**

27.     **(Please See Attached Exhibit D)**

28.     The Sheriff came to my home and soon after, DCFS came to my home and they coerce Plaintiff into speaking to my son with the promise of helping us.

29.     It was clear they were not helping and Plaintiff asked them to leave.

30.     They get plaintiff to agree to a hospital hold for her son.

**C. February 20, 2021**

31.     A dependency Petition was filed against me. It was not complete as it was not signed, not dated, it had a social workers name on it **(See Exhibit E)**.

32.     Notice was given to me over the phone by a social worker and was told that she was not entitled to medical information regarding her child, and this was before any court hearing.

33.     Plaintiff wasn't given any information or documentation and the Hospital would not give any information to Plaintiff about her son for multiple days

**D. February 22, 2021**

34.     JV 100 was sent via email to Plaintiff by Sharica Pleasant, but not signed by her nor was there a warrant attached**. (Exhibit E)**

Complaint for Injunctive Relief and Damages

1    35.    Neither exigent nor any necessary circumstances to take my Son existed.

2    **E. February 23, 2021**

3    36.    The Court left a voicemail notifying Plaintiff of the court date of February 26, 2021

4    without any additional information.

5    **F. February 24, 2021**

6    37.    Mother received courts voicemail. With little information mother began

7    attempting to call the number back for more info

8    38.    Hours later mother connected with court, court advised mother an attorney would

9    contact her prior with more information

10   39.    Mother attempted to connect with Law offices from this date until receiving a call

11   from attorney

12   **G. February 25, 2021**

13   40.    Mother is contacted by Attorney Kevin Shannon of LADL late Thursday evening

14   less than 12 hours from the detention hearing. Attorney spoke over Ms. Joseph often and

15   seemed in a rush to get off the call.

16   **H. February 26, 2021 (Detention Hearing)**

17   41.    Plaintiff speaks to Kevin Shannon early Friday morning who first sends the

18   detention report to Mother for first time shortly prior to hearing which was on WebEx.

19   42.    Mr. Shannon laughs at Plaintiff for wanting her son back and soon thereafter a new

20   attorney Dalida Vartinarian is assigned to her. It's not clear to Plaintiff that Dalida is aware of

21   the facts or prepped for the hearing.

22   43.    Plaintiff spoke briefly to Ms. Vartinarian and asked that she ensure Plaintiff she will not

23   be "tricked" into waiving ANY of Plaintiffs rights.

24   44.    Mother was not prompted to speak other than spelling her name and entering a plea of

25   not guilty. Mother was not allowed to respond to the report nor did she even have time to read it.

26   The record states that Plaintiff waived her right to read the report, Plaintiff did not do this.

27   Mother's attorney asked the court for services to help keep minor in home such as having

28   Grandmother (Maternal) move in with family temporarily to offer another set of eyes and ears,

1  | this was declined. Her attorney did not object to the report, push for an evidentiary hearing or
2  | file a demur to the report as she was able to.

3  | 45.     Minors Counsel had already been appointed without motion or chance for Plaintiff to
4  | Object or challenge the basis of such.

5  | 46.     Minors counsel then argued that Plaintiff had severe mental health issues that have gone
6  | on without being addressed that would cause harm to her child. They had no evidence of this nor
7  | did they have any facts or valid information. None was presented. Only innuendo was presented
8  | and no diagnosis nor any testimony subject to cross examination. It appears this was accepted by
9  | the court and my attorney never objected to any of this. I have no transcript at this time.

10 | **I. Detention Report (See Exhibit D)**

11 | 47.     The Detention hearing report states court finds notice has been given as required by law
12 | §290.1(notified orally over telephone without paperwork until days later)

13 | 48.     The Detention report states reasonable efforts have been provided to prevent removal.
14 | However, the reality is that no efforts other than my son being placed in a hospital that was MY
15 | doing were provided. States reasonable efforts were made 3 times. No facts supporting this are
16 | provided. It appears this is simply written to fill in space with no details.

17 | 49.     Minor was "detained in shelter" Mother does not know where.

18 | 50.     DCFS ordered to provided "reunification" services to parents.

19 | 51.     The Court States that DCFS is to provide CASE APPROP. referrals to parents
20 | INCLUDING random drug testing even though drugs and alcohol have had no part in any of this
21 | and that is NOT case appropriate. And there is no probable cause and no case evidence that has
22 | been open by Plaintiff to cross examine to this point. This is now a farce trial.

23 | 52.     Court ordered 3 days a week, 3 hours a day visits to Wrigley Joseph giving DCFS
24 | discretion to further LIBERALIZE visitation.

25 | 53.     Court appointed a forensic psychologist to examine Kristen Joseph.

26 | 54.     Mother enters a denial plea.

27 | 55.     It is stated there is substantial danger if child is returned home despite child being
28 | hospitalized with adequate time to remedy any alleged concerns. Again, no evidence, no right to

cross examine this evidence or the persons making such allegations and at no point did Plaintiffs appointed attorney raise these issues on Plaintiffs behalf.

56.     Minute order states DCFS made reasonable efforts to keep child in home and NO other services are  available to prevent further detention, child was hospitalized, then child was removed. It's not clear what any of this means. This clearly a railroading of my rights and in retrospect, it was done to make me think it was all proper.

57.     Visitation is ORDERED 3x3 physical visitation is ordered and mandated

58.     Court orders multi-disciplinary assessment of family and child

59.     Court orders assessment of needs and linkage to services

60.     HUB medical services ordered for minor

61.     MO orders DCFS to use best efforts to locate a FACILITY that can address child's special needs

62.     Arraignment set for 4.9.2021

63.     Adjudication set 4.23.2021

**J. March 10, 2021**

64.     Plaintiff receives jv-221, which is a Proof of notice, and notice of child on new psychotropic medication with having severed Plaintiffs medical decision rights or asking her. I am being informed what is happening to my child with no say in such.

K. **March 11,** 2021 *(Drug test)* **(Exhibit f)**

65.     Plaintiff's name was called to provide a urine sample from Pacific Toxicology, an order made by the court despite drugs and alcohol not being in affiliation with the case what so ever. Mother has never used illegal substances and has not had a sip of alcohol in years.

66.     Mother realizes the ordered test states she does not take any prescribed medication yet she does so she contacts social worker Cristina Pinedo. Cristina Pinedo states this is simply "protocol" and advises mother to proceed with the test. Again, no evidence has been presented to date and Plaintiff has had no opportunity to cross examine such, but is now pushed into this.

67.     Plaintiff is not comfortable with this and makes a phone call to Cristina to ensure a new order is created and provided to mother in which she finally does later that day.

1  March 12, 2021 Plaintiff Abandoned by

2  68.     Mother receives text and then call by Dalida V. stating she is moving departments and

3  will be passing Mother off. Mother off to a new attorney was hesitant and voiced her concerns.

4  **(Exhibit A)**

5  March 15, 2021

6  69. Child calls mother from hospital to tell her how happy he is as he was told he was "going

7  home" but Mother has not been contacted by a new attorney and continuously reaches out to

8  Dalida V to learn who her new attorney is to move the case along and see her son.

9  **F. July 30 2021 Hearing**

10  70. Mother receives call from Danielle Stehura stating Judge Tamara e. Hall recused herself. She

11  states the hearing will go on despite mothers objections and request for a continuance.

12  **G. Petitioning**

13  69.     I have been prevented from filing documents in my own case by unknown Doe clerks. I

14  am informed that Judge Tamara Hall prevent

15  70.     Marieke Randoy, my ADA Advocate has filed twice to garner me needed ADA

16  Accommodations as I have Attention Deficit Disorder and that makes it difficult to understand

17  what is going and properly defend my rights.

18  71.     To this point, Plaintiff minor child has been in possession of the paternal grandparents.

19  72.     It appears that on or about August 13, 2021, Defendants have taken them into Foster care

20  and Plaintiff does not fully know why. Plaintiff also does not know where her son is. This is the

21  most precarious situation a parent can be in. Her child is taken for unlawful and unwarranted

22  reasons, she does not know where her son is and Defendants don't seem to wish to tell her.

23  73.     Mother received an email from Cristina Pinedo on or around August 10, 2021 stating

24  child had been rushed to UCLA hospital after a severe meltdown. Mother then received a follow

25  up email stating child had been placed in a foster home. Mother responded asking where child is

26  and to speak to him in which Cristina responded that was not to be allowed per court orders.

27  Mom asked for the production of said orders cc'ing both Pinedos supervisors, Aurora Ayala and

28  Tina Luke and as of 8.16.2021 has not received a response.

Complaint for Injunctive Relief and Damages

74.     Mother was notified by Cristina Pinedo on or around August 12, 2021 that child has once again been relocated to another foster home. Pinedo stated she contacted all contacts Mother provided to avoid foster placement, Mother reached out to contacts and every contact states they have not been contacted.

75.     The attorney appointed to represent Plaintiff do not know where her son is and they recently sent a pile of paperwork that supposedly explained where he is. Plaintiff sifted through this pile of paperwork and found nothing. Plaintiff asserts that LA LC

**Other Important Matters**

76.     At one point, On or around first hearings, Judge Tamara Hall taunted me because I came to these zoom hearings all by myself and was not adequately equipped with the necessary electronics to make this seamlessly easy.

77.     Plaintiff  was so concerned with the closed aspect of the hearings that  I asked for an Open Hearings. I have since learned about US Supreme Court Cases such as In Re Murchison, In Re Oliver where it was decided that hearings in secrecy were problematic and actually violated a parties rights. I felt the process was so unfair that I asked for the hearings to be open to the public as I felt they were a sham and them not be open to view by the public is what allowed so many people to hurt my rights.

78.     I also asked for a trial by jury as some form of equalizer as well. I raise that based on Amendment 7 as it applies to the states and Article I Sec. 16 of the California Constitution as I felt a trial in a closed court with only a judge was unfair and through this process I am guaranteed to lose all my rights. This is a sham.

79.     I also requested **(See Exhibit B)** my ADA accommodations twice. They went ignored and my anxiety has been off the charts throughout this entire process.

**VI. INJUNCTIVE RELIEF**

80.     Plaintiff incorporates by reference the preceding allegations.

81.     On or about August 12, 2021, it appears that Plaintiffs son is now in foster care.

82.     On or about July 16, 2021, there is a new hearing that is being held to make a final decision into the severing of Plaintiff's Education rights of Plaintiff to decide how her son will

1   be educated and ancillary tights attached to this. It is reasonable that any future hearings will

2   likely be in this same manner, fast tracked, without her ability to assert her rights or with a

3   competent attorney.

4   83.     As of right now, Plaintiff is not able to represent herself as Defendant officially represent

5   her and she reasonably cannot trust the LADL as they do not act as reasonable attorneys and

6   have not fought her case as a reasonable attorney would.

7   84.     Plaintiff moves to enjoin that hearing from going forward to address the violations of due

8   process, the right to either represent herself or have competent representation and if this does not

9   happen, and due to the actions and inactions that have already happened in the Dependency

10  Court, Plaintiff is likely to summarily have all her rights to her child stripped away and that is a

11  reasonable prediction considering she has been railroaded in one of the most shocking methods

12  one can possibly witness. All defendants seem uninterested in Plaintiff having a fair trial or

13  having her rights to have custody, raise, rear, love and make decisions regarding her son.

14  85.     The US Supreme Court held that "The fundamental liberty interest of natural parents in

15  the care custody, and management of their child is protected by the Fourteenth Amendment, and

16  does not evaporate simply because they have not been model parents or have lost temporary

17  custody of their child to the State. A parental rights termination proceeding interferes with that

18  fundamental liberty interest. When the State moves to destroy weakened familial bonds, it must

19  provide the parents with fundamentally fair procedures."[1]

20  86.     The procedures in place and used are fundamentally flawed and are gross in the extreme.

21  There has been no scintilla of due process. Numerous fundament and Constitutional rights that

22  should be afforded to or for any American has been summarily stripped or ignored. These

23  safeguards to all American rights don't even seem to exist. Appointed counsel doesn't even seem

24  to know what rights to assert and their appointment is solely a venire with no substance, but to

25  say that Plaintiff was given an attorney to suggest that the attorney fought, but in truth did not.

26  87.     The second holding of Santosky (Supra) is that "The nature of the process due in parental

27  rights termination proceedings turns on a balancing of three factors: the private interests affected

28

---

[1] Santosky v. Kramer, 455 US 745 (1982) Holding 1(a)

by the proceedings; the risk of error created by the State's chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure. In any given proceeding, the minimum standard of proof tolerated by the due process requirement reflects not only the weight of the public and private interests affected, but also a societal judgment about how the risk of error should be distributed between the litigants. The minimum standard is a question of federal law which this Court may resolve. **Retrospective case-by-case review cannot preserve fundamental fairness when a class of proceedings is governed by a constitutionally defective evidentiary standard**." [2]

88.     The private interest is Mothers right to have personal and direct right to the possession of her child and the right to raise him and not have the state take him as has happened. Due to the fact that the complaint is factually false and the appointed attorneys have not asked for or held evidentiary hearings into the factual and evidentiary basis of the statements in the complaint demonstrates that this process is a farce and a sham and will likely lead to Plaintiffs loss to the right to raise, rear, up bring, and directly love her son as any good mother should.

89.     To fortify this claim, Plaintiff asserts the basic standards of evidence as per the California Supreme Court in Fewel v. Fewel, 23 Cal.2d 431 (1943): "The investigator was not present for cross- examination. Counsel for plaintiff offered in evidence certain affidavits averring facts material to the issue before the court. These affidavits were ordered filed but were not read or considered by the court. The recommendation of the investigator was filed and on it were endorsed the words, "Approved and so ordered," and below them, the judge's signature. An appropriate minute entry was made. Such procedure cannot be sustained. **By it the plaintiff was denied the fair trial in open court to which she was entitled**; she was deprived of the right to produce and have consideration given to material evidence; **she was precluded from cross- examination of adverse witnesses**; and the order rests upon no evidentiary foundation whatsoever. **Such errors require a reversal of the order**." **Fewel Supra at 434"**

---

[2] Santosky v. Kramer, 455 US 745-746  (1982) Holding 1(b)

90.     It is sadly ironic that similar actions are being done in Plaintiffs case. Facts are asserted by Defendant LA DCSF and my attorneys don't even make them prove up the case. I come to court and my day in court is watching my attorneys assist the prosecution in giving up my rights.

91.     This was also asserted in the California Supreme Court case of Elkins v. Superior Court, 41 Cal.4th 1337 (Cal. 2007) where it appears that the Judge of Contra Costa County California were prevent litigants who represented themselves pro se, were not able to have evidentiary hearings to prove the position in their cases thus allowing those with attorneys to railroad them and they in turn suffer losing their rights to their children due to an unfair process.

92.     Further, Plaintiff asserts that the closed hearings where the public is not able to observe what is able to help make this happen.

## Standards for Injunctive Relief

93.     It appears to Plaintiff that the current Federal standards for injunctive relief are:

94.     (1) The moving party will suffer future irreparable injury and has no adequate remedy at law if injunctive relief is not granted.

95.     (2) Granting an injunction is in the Public Interest

96.     (3) The balance of hardships tips in favor of the moving party.

97.     (4) The moving party has established a strong likelihood of success on the merits.

98.     It appears that these tests are found in the case of Winter v. NRDC, 555 U.S. 7 (2008), which in turn refers back to Weinberger v. Romero-Barcelo, 456 U.S. 305 (1982).

99.     It would be proper for Plaintiff to examine each test as it relates to her case.

100.    The facts plead hereinto this complaint supports Plaintiffs position that the actions taken by defendants are intended to railroad her and take her child and thus violate her rights to due process, equal protection and she will likely lose the right to raise her child as well. Plaintiff has been prevented from even representing herself to assert her own rights when it was crystal clear that her appointed attorney's would not. Therefore she has suffered the loss of numerous rights and thus is reasonable to presume that more of her rights including her various custody rights and the ability to regain rights such will be lost through this fraudulent case. It is reasonable to assume that there is no adequate remedy outside of federal injunctive relief.

101.    Granting the injunction is in the public interest, society at large would be against anyone having their children either individually or collectively taken without cause, without justification, by false assertions and thereby have their custody, possessive, and all other rights to raise, rear and up bring their child summary taken in such a horrid, odious, cold, callous, and inhumane fashion as this meets this standard.

102.    Based on the facts as plead, the balance of the hardships tips sharply in favor of plaintiff as the moving party as a TRO and injunctive relief are necessary.

103.    Plaintiff has articulated the facts and the standards to weigh these facts and is certain the merits require injunctive relief as her right to raise, rear and up bring her child is in jeopardy.

TRO PRAYER

WHEREFORE, Plaintiff prays for the following injunctive relief from this court as follows:

104.    Issue a temporary restraining order and a preliminary injunction ordering defendant Court, the employees of the Los Angeles County Department of Child and Family Services (LA DCSF) and the attorneys that work for or are agents of or represent this agency, which brought this action as well as the Los Angeles Dependency Lawyers from proceeding forward in the dependency case brought against me and the rights to my child (In the Matter of Wrigley Joseph Case#21CCJP00852A) to refrain immediately from any actions in that case against mother and pending the final hearing and determination of this action from this Court on the actions of the Dependency Court and all Defendants.

105.    Plaintiff also seeks an order restraining the Los Angeles Dependency Lawyers from representing her in this case at all at this point or any point forward.

106.    Plaintiff seeks an order restraining the clerks of the Dependency Court from presenting her from being able to file the documents she was not able to have filed on July 30 and preventing the clerks from stopping her.

107.    For any and all other such relief this court deems to be just and proper.

**VII. Causes Of Action**[3]

---

[3] Plaintiff is going to raise causes of action as they relate to this along with seeking injunctive relief.

**First Cause of Action**

**CONSPIRACY AGAINST PLAINTIFFS CONSTIUTIONAL RIGHTS 42 USC 1985**

**Against All Defendants**

108.    Plaintiff incorporates by reference the preceding allegations.

109.    42U.S.C.§1985 makes it unlawful for any two or more persons to conspire to commit a constitutional violation and/or to deprive another of their constitutional rights.

110.    There are numerous conspiracies in this case, the largest and most prevalent is the direct and wrongful taking of Plaintiffs child based on false evidence and without a warrant.

111.    Further, intentionally furnishing Plaintiff a law firm with attorneys who either were not properly trained or have no intention of putting up the most basic legal defense by challenging the evidence against her thus handing the case to prosecution thereby furnishing the Court and the state prosecution with false evidence by default to violate Plaintiffs due process and petition rights as well as her constitutionally protected rights to raise rear and up bring her child.

112.    These direct actions by the (LA DCSF) and the attorneys that work for or are agents of or represent this agency against Plaintiff and the direct inactions of the LA DL and its attorneys and agents were done to further this end goal.

113.    The actions and or inactions of defendants was the proximate cause of the loss of Plaintiffs rights so far and the further intent is to take the rest away as they are able and plan to.

114.    Plaintiff has been harmed and the actions of defendants are the procuring Cause.

**Second Cause of Action**

**Denial of Plaintiffs rights under the Americans with Disabilities act 42 USC 2000a-6**

**Against Defendant Courthouse**

115.    Plaintiff has filed for accommodations under the Americans with Disabilities Act and such petition has gone ignored leaving Plaintiff without needed accommodations.

116.    California State law give Courts Five Days to respond to such motions and that time has come and gone, but plaintiff has had to fight her court case without these accommodations.

117.    Plaintiff is not able to fight equitably without these accommodations.

118.    Plaintiff has been harmed because of this.

119.    Inactions of the Court in taking and not responding to this petition is the proximate cause to this harm. Or on the alternative, the direct intent in not responding is to the same purpose.

120.    Plaintiff prays for Damages to be determined at trial.

### PRAYER

WHEREFORE, Plaintiff prays for relief from this court as follows:

1.  The Granting of Temporary Restraining Order as delineated above.

2.  General damages according to proof at trial;

3.  Attorney's fees under 42 U.S.C. §1988;

4.  Costs of suit incurred herein;

5.  Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

By: _____     8-16-2021

**Kristen Joseph,** *Pro Se*
kristen@kdotphotography.net
5434 Premiere Ave.
Lakewood, Ca 90712
Tel. (562) 314-8111

### VERIFICATION

IT IS HEREBY certified that the facts in the foregoing pleading are true and correct under penalty of perjury to the best of my knowledge and belief. Attachments to this are true and correct copies of the items they purport to be.

Dated this 10th Day of July 2019 *A.D.*     8-16-2021

By: _____

**Kristen Joseph,** *Pro Se*
16
Complaint for Injunctive Relief and Damages

kristen@kdotphotography.net
5434 Premiere Ave.
Lakewood, Ca 90712
Tel. (562) 314-8111

## Table of Exhibits and Attachments

| Exhibit | Attachment |
| --- | --- |
| **Exhibit** | **Attachment** |
| A | Attorney Emails |
| B | ADA filings |
| C | Employment verification |
| D | Allegations/ Responses |
| E | Removal Orders |
| F | Drug testing |
| X-1 | Substitution of Attorney |
| X-2 | Continuance |
| X-3 | Objection |
| X-4 | 388 Motion |
| X-5 | Recusal and Relief |
| X-6 | Affidavit of Duress |
| X-7 | Complaints |
| X-8 | Board of Supervisors |
| X-9 | Police Reports/Visitation Violations |
| X. 10 | Due to severe adHD I have an auto record to translation app & can provide accurate reacting |

- much of Incident @ park is video recorded   7.30.2021

exhibit A
(attorney communication)



8/16/2021       Wrigley Joseph - kristen@kdotphotography.net - kDot Photography Mail

**Wrigley Joseph**   External   Inbox

**Colbert, Dylan** <Colbertd@ladilinc.org>
to me, Brooke

Hello Kristen,

I reviewed the emails that you sent to me over the weekend, and I have tried to specify each issue that you raised. Below are my responses:

1. Remote hearings and court watcher: Edelman Children's Court hearings remain remote, so our hearing on May 10 will be via webex. Please make sure tl room, and you don't have your phone near you. You have done an excellent job so far regarding logging into court. I don't anticipate that you will have a you've requested a court watcher. Can you explain the role of this person? Be aware that if anyone objects to this person being present, the court can exc proceedings are confidential.

2. Motion to dismiss—the proper procedure for seeking dismissal of a juvenile dependency case is not a motion to dismiss, it's to have a trial where we arg previously discussed, we will immediately file a notice of appeal once the court makes disposition orders. We cannot file an appeal at this time because v decision is not final until after the disposition. Ms. Huley explained the appellate process to you on the 26th. As we have stated before, in order for the C sustain at least one allegation or an amended allegation. If the Court does not sustain any allegations, the case will be dismissed, and we will not proceed

3. We agree that the lack of visitation is unacceptable, and we've said this to the Court and all counsel. I reached out to county counsel and told her that you our hearing next Monday for potential cross examination. She responded to me this morning and stated that she will tell them that they should be present hearing unless they are on vacation.

   I also told her to contact the social worker and find out why you have not been provided a visitation schedule yet. It is not acceptable that they haven't m will have to remind the court that they have denied you visitation since your son was detained from you.

4. What is your current schedule during the week – availability for calls and visits. You said you were available almost anytime during the week, but then y classes. When specifically are you available? Lastly, when did you inform your social worker of your availability. At the detention hearing and the heari ordered DCFS to provide you a schedule.

5. When the worker mentioned that she "just filed for a monitor," did she say anything else? Did she say why she delayed? We want to get all the details to

6. What is the current phone schedule you've been given? What schedule would you prefer to have? Has anyone been monitoring your phone visits with W

7. We've asked that the worker responsible for visits and the DI be available for cross examination on the disposition date. As we discussed, they weren't c: them at the adjudication wouldn't have helped prove our argument at that time. Our argument at adjudication was that DCFS has not proven the allegatio evidence." We argued that point by having you testify and then through my argument afterwards. You testified as to the facts which illustrated that the al the legal standards to argue that the counts should not be sustained. If we were to cross examine the DI or the CSW at adjudication, we would not have s allegations. Calling them to testify would: 1) give them an opportunity to clarify their allegations against you, and 2) give them an opportunity to make y argument is significantly different. Our argument at disposition is: 1) that a substantial danger to Wrigley's physical or emotional help does not exist if be you the services that the Court has ordered. We will speak later in the week and discuss what questions should be asked during each exam.

8. We want you to testify at disposition about the services that will be in place for Wrigley if he's returned home, as well as the services he is currently bein

9. You said Wrigley might be doing better because he's on multiple medications. Do you know which medications? Would you be willing to keep him on tl

10. We cannot get another judge, as we have already filed an affidavit objecting to an even worse judge prior to the first hearing, and there is no ability to fil

19

11. In terms of encouraging you to work with DCFS, it is our obligation to advise you about the system and give you direction as to the best way to achieve possible and for him to come home. We hate DCFS just as much as you do, but the court will expect to see that you are making your best effort to collab

We know that this is a horrible situation that you are in, but we are here to help in any way that we can. We want your son to come home to his mother and we wi

Thank you,

**Dylan Colbert**
Staff Attorney
**Los Angeles Dependency Lawyers, Inc**
Law Offices of Jolene Metzger

May 11, 2021

8/16/2021
Case 2:21-cv-06654-SVW-ADS   Document 1   Filed 08/17/21   Page 22 of 50   Page ID #:22
wrigley joseph - kristen@kdotphotography.net - kDot Photography Mail

## wrigley joseph   External   Inbox



**Kristen Michelle** <kristen@kdotphotography.net>
to Dylan, Brooke

I'm assuming they're not letting my son come home so along with the appeal I need to research every other motion to get him home immediately.

I also assume you know what happened yesterday was an extreme blow to the entire court system as nothing she said was based on any law.

I'm not sure why we didn't call witnesses, I've asked the entire time...I'm allowed to have them yet why didn't I? I'm not sure why my neighbors statements and roommates statemen my many, many character references don't trump 2 CPS statements and 2 Officers statements that I GUARANTEE are not accurate yet hearsay was accepted yesterday and they didr

They took my son in the first place without any evidence, There was NO factual evidence or basis to remove him in the first place, a violation of due process.

I since have disproved all allegations without an absolute doubt other than the zipties, yet all allegations were found to be true?  From hearsay? Violation of rights...

Everything was deemed from hearsay and that's ridiculously against my constitutional rights. Nobody but myself was called as a witness or testified under oath.

The conversation with Mary doesn't exist, I have all conversations recorded for proof.
The information the judge stated was highly incorrect and or construed.

She literally said in the court of law in front of all of us that CPS and the Police were more credible than ME and my HARD EVIDENCE.  Does she not understand that is "hearsay"?

She claimed ALL allegations were true, yet one allegation is my child being locked in closets which is confirmed by multiple parties isn't even possible.

The statements about the medication are not only untrue but is my fucking right whether he is medicated or not, NOT THE STATES.

She doesn't know anything about mental disabilities, she didn't know what an IEP was and she stated due to my child doing better somewhere else that's where he will stay without a where he is living, how the agency has alienated me, how my brother doesn't want him there and how there is absolutely no harm at home for him. She literally stood in front of me v away from me and place him elsewhere without any FACTUAL information.

Everyone she quoted needed to testify under oath or send a notarized factual statement. NO ONE, NO ONE BUT ME did this yet they're more credible than myself and my actual evi

Again, I have actual visual evidence as well as audio evidence to back up MOST of what I'm saying. They have nothing.

I'm extremely disappointed.

I will not work with CPS period. I will be with extreme diligence researching the motions to file from here. If you have ones you understand and know about please inform me so we immediately.

I do not agree to any case plan. I am not signing anything more about visitation with my son and that's my right, I am not being forced to wear a stupid mask to see my child and spe connection what so ever. I do not have to sign anything and I absolutely will not do so.

Can I still file a statement of objections?

How about another 388? What is going on is not in the best interest of the child...

Is it too late to disqualify the judge? Recuse?

827? Make the social workers provide actual proof?

332? Everything was based from hearsay...

361.4 needs to be also filed IMMEDIATELY.

If the appeal will take too long i'd like to file to return the case to disposition and get rid of this ridiculous judge.

I'd also like to file a sanction on the agency for violating their court order to visitation.

thanks
Thank you.

MAY 11, 2021

TO: Dylan Colbert
Brooke ; Huey

From: Kristen Joseph

21

8/16/2021                                                    RE: Wrigley Joseph URGENT - kristen@kdotphotography.net - kDot Photography Mail

**MAY 27, 21**

**RE: Wrigley Joseph URGENT**  External  Inbox



**#1**

**kristen** <kristen@kdotphotography.net>
to Brooke, Dylan

Hi dylan and brooke..

Today is 97 days since I've seen my son.
Until today it had been 6 since i spoke to him.

The sw has been deceptive and lied continuously.
I met with her Tuesday where she dramatically and unprofessionally stormed off.

She stated on tuesday shed call and evaluate our friend in lb to move my son closer however there has yet to be such call.
She stated tuesday i would see my son today yet i havent heard from the agency.

Last week my son told me the social worker said he wasn't gunna move closer. The social worker called my son a liar.

Today my son said his aunt is about to be his permanent foster mother.

The agency...lawfirm..court..and all involved have drastically misrepresented my family...eroded our civil liberties and constitutional rights, broken up our family, denied us our rights
manipulative and i have no idea what is going on right now.
The court and judge clearly didnt read through all of the evidence.

I was at my sons school today clearing up absences that should NOT be there and should have been addressed and in the courts paperwork yet the judge stated massive amount
the process of having them taking care of after addressing the school and district  today.

I have paperwork from the pharmacy printed days before my son was taken showing i tried to fill his prescription but it was at the wrong pharmacy. I have call logs showing i called t
It is clear on even the fda website the abilify isnt approved for his age at the time hence making it difficult to have filed.
The inaccuracies of it all are chilling. Im asking you both to stop being attorney's for a moment and be human with empathy... how would you feel if this was happening to you and y
you want or signed up for, things CAN and NEED to be done. Immediately.  Thank you.

Sent from my T-Mobile 4G LTE Device

-------- Original message --------
From: "Huley, Brooke" <⟨...⟩>
Date: 4/29/21 9:02 PM (GMT-08:00)
To: Kristen Michelle <⟨...⟩>, "Colbert,Dylan" <Colbertd@ladlinc.org>
Subject: RE: Wrigley Joseph

**#2**

**4·29·21**

Hi Ms. Joseph,

That is upsetting to hear. It is inexcusable that they have denied your right to see your son for months and have ignored your son's needs.

What is your current schedule during the week? Did the social worker give any additional specifics about the visitation other than saying your schedule doesn't work?

Mr. Colbert, if you haven't already, please notify county counsel that Ms. Joseph continues to be denied visitation. There is zero excuse at this point. Please also notify her and minc

Again, I am so sorry for the trauma that DCFS has caused your family, Ms. Joseph.

Sincerely,

⟨...⟩ | Supervising Attorney
Law Office of Jolene Metzger
Los Angeles Dependency Lawyers
901 Corporate Center Drive, Suite 203
Monterey Park, CA 91754
Office: (323) 859-8531
huleyb@ladlinc.org

**MAY 27, 2021  [#1]**
**To: Dylan & Brooke Huley**
**From:  KJ**

**April 29, 2021  [#2]**
**from Brooke Huley**
**To: Dylan & KJ**

22

Feb. 26, 2021

## Dept. 423 Login information  External  Inbox ×

**Kevin Shannon** <ShannonK@ladlinc.org>                                    Fri, Feb 26, 10:21 AM  ☆  ↩  ⋮
to me, Dalida  ▾

Hello Ms. Joseph,

Please see attachments and login information.

https://lacvirtualcourts.webex.com/meet/chc-dept-423

phone: 213-306-3065
access code: 965 778 844

Regards,

Email from Attorney
Kevin Shannon
morning of hearing

2-3

4.9.2021

TO: KJ

From. JoleneMetzgar
(director of law firm)

Meeting & Case Information  External  Inbox ×

Metzger, Jolene <Metzger@glad-inc.org>   Fri, Apr 9, 6:21 PM
to me

Dear Ms. Joseph,

I am reaching out to you to schedule a time to speak to you about your case after receiving a voicemail message from you on Tuesday, April 6, 2021, at approximately 12:21 p.m. I understand that you have several complaints about your representation. I am available to speak with you on Monday and would like to set up a phone interview around 10 a.m. My schedule is somewhat flexible on Monday; however, I will be meeting later in the day and unavailable after 2 p.m. Please let me know if that time works for you or whether you would like to schedule another date and time to discuss your case. I hope that we can resolve any issues or complaints that you have.

I want to let you know that in my reviewing your case, I see that your child's attorney filed a request for a walk-on request asking for a hearing to address educational rights. Your child's attorney would like to appoint the maternal aunt and uncle as co-educational rights holders so that they can make educational decisions with you about your child. The child's attorney states that there is an IEP (Individualized Educational Plan meeting) scheduled on April 16, 2021. The child's attorney did claim that you had allegedly not provided enough information to the school about your child's services, which is the basis for the request. Attached is a copy of the proposed order. The court scheduled the hearing to address educational rights on **April 13, 2021, at 8:30 a.m.** You have a right to participate in this hearing, and I believe it is important for you to discuss your response to this request with Mr. Dylan Colbert.

Besides the request for a walk-on hearing to address educational rights, I see that you filed a JV-180 or "388" petition. All motions for the court must be prepared by and in consultation with your attorney. Procedurally, this motion was filed prematurely as you have the right to present evidence and testify at the trial date. As a result, this motion will likely be denied without hearing. However, we can discuss what information is important to convey to the court as we prepare your upcoming case for trial.

Attached to this email, please find a copy of the Jurisdiction/Disposition report dated April 9, 2021. The "trial" or Jurisdiction/Disposition hearing is scheduled for April 23, 2021. The father's arraignment hearing is also scheduled on that day. If the father appears at that hearing, there is a possibility that your case could be continued so that his newly appointed attorney can familiarize

March 14, 2021

TO: Dalida v. attorney

Arm: KJ

---

Wrigley Joseph                                                                                    

 **Kristen-Michelle Joseph** <to Dalida>                                      
to Dalida

Hi Dalida,

I have come to find in order to change attorney's it would need court approval, or client approval. I'm just concerned as to why I've been thrown around so much and why it's been an entire week without any attorney interaction. I have called repeatedly without anyone picking up including any type of answering service. I have reached out to you and to the senior attorney you provided me an email for multiple times. My son was taken and placed somewhere I absolutely was not okay with. I reached out and told you it was an emergency, and it was. I have had interactions with the social worker (how could I not when she is doing everything I ask her not to?) I am being set up for failure by everyone around me including any attorney's that are or aren't here. I went to the bar to report the office and unfortunately it only allows you to report an attorney and not the firm, you have been very kind and empathetic to me so I simply couldn't do that however I did want to reach out and let you know I will be going to the courthouse tomorrow to file a JV-180 on my own behalf. I'm not sure what went wrong. If I did something wrong by being a "difficult" client, I simply don't agree with anything going on, and I want my child home and I believe with my entire heart and soul this is the most cruel and corrupt thing that could happen to good families and parents, especially in our situation that is so very delicate so it's pretty difficult not to feel so passionately when you've been fighting for your child for almost a decade and get repaid this way. I'm not quite sure what else I'm supposed to do as far as reaching out to an attorney I don't even have a name for but I'm not quite certain that should be my responsibility. In any event, I can't wait til court date. I'm being treated insanely unfair , I haven't seen my son in almost a month and I'm not waiting any longer.

Kristen Joseph

TO: KJ
From: Dylan (esq)

**Colbert,Dylan** <Colbertd@ladlinc.org>
to me

**Images are not displayed.**

Hello Kristen,

1. The Court ordered for your son to remain detained from you for the time being. **Regarding motions, we will file an appeal so that the higher courts ca** determine if the Court's ruling was legally proper.

2. We have discussed before why other witnesses weren't called at both hearings. The reason is because at the adjudication hearing, our goal was to p and that DCFS had failed to prove by a preponderance of the evidence that you pose a substantial danger to Wrigley's physical or mental health. As not have assisted in proving our argument. At the disposition, we argued that your son should be returned to your care and that DCFS had not show DCFS had not shown that you pose a substantial danger to your son's physical or emotional health. Calling the social worker or your neighbor would discussed this before the hearing yesterday.

3. As we have discussed, under the social worker's exception, one level of hearsay is admissible in dependency court. After reviewing all the document Huley discovered any instances where there was more than one level of hearsay. If we had noticed that, we would have filed the appropriate motion Remember, hearsay is an out of court statement that is offered to prove the truth of the matter asserted.

4. As we have discussed, when Wrigley was first detained from you DCFS had to file for a removal order. The evidence that they used to support that o

5. Yes, all the allegations were found to be true by the Court. However, the court stuck the portion of allegations A-1 and B-3 which references the zip ti

6. It is the Courts responsibility to review all the evidence and determine what evidence it deems to be more or less credible. Unfortunately, the Court fo more credible than your testimony. As stated, the Court is permitted to rely on evidence contained in all admitted reports and evidence.

7. The Court has jurisdiction over your son and reasoned that you should have had your son take all his prescribed medication, and your failure to do s Court drew a connection between Wrigley's alleged improvement in his current placement and the fact that he has been taking his medication. The te performance has improved was the basis for the Courts reasoning.

8. Please explain what you mean by a "statement of objections."

9. The legal standard for a 388 motion to be granted is that there has 1. been a substantial change in circumstances and 2. that changing the court's or the Court made its order yesterday, there has not been a substantial change in circumstances since yesterday. Thus, a 388 motion would not be app

10. We cannot file a 170.6 motion at this time to change the judge. That can only be filed before the first hearing begins and only one may be filed per pa

11. 827- The Court has already made its finding and provided a factual basis for its ruling.

12. 332- This welfare and institutions code controls what the detention report is required to contain. As stated above, under the social workers exception admitted.

13. WIC 361.4- This code section provides the guidelines that DCFS must follow before making emergency placement of children.

14. I don't know how long the appeal process will take. As stated above, we cannot remove this judge or go back to the disposition hearing unless that is

15. During yesterday's hearing, we informed the Court that you have not been receiving visitation. Attached is the LMI that was recently submitted by DC for failing to provide you with visitation. If you are interested in filing a claim, please speak with a civil attorney.

16. What do you mean by counsel-to-counsel communication?

I know that yesterday's ruling was not favorable. But refusing to comply with your court ordered case plan will only make things worse. The Court stated that already completed, those will count towards your case plan. That means, that if you speak with your social worker, and she approves the parenting and ange retake the class.

However, if you refuse to comply with DCFS, your son will continue to be detained from you.

Thank you,

Dylan Colbert
Staff Attorney
Los Angeles Dependency Lawyers, Inc
Law Offices of Jolene Metzger
901 Corporate Center Drive, Suite 203
Monterey Park, CA 91754
Main: (323) 262-2353

20

5·11·2021
8/16/2021
TO: Dylan + Brooke 89.
from: KJ



wrigley joseph - kristen@kdotphotography.net - kDot Photography Mail

**wrigley joseph**   External   Inbox

**Kristen Michelle** <kristen@kdotphotography.net>
to Dylan, Brooke

I'm assuming they're not letting my son come home so along with the appeal I need to research every other motion to get him home immediately.

I also assume you know what happened yesterday was an extreme blow to the entire court system as nothing she said was based on any law.

I'm not sure why we didn't call witnesses, I've asked the entire time...I'm allowed to have them yet why didn't I? I'm not sure why my neighbors statements and roommates statemen my many, many character references don't trump 2 CPS statements and 2 Officers statements that I GUARANTEE are not accurate yet hearsay was accepted yesterday and they didn

They took my son in the first place without any evidence, There was NO factual evidence or basis to remove him in the first place, a violation of due process.

I since have disproved all allegations without an absolute doubt other than the zipties, yet all allegations were found to be true?  From hearsay? Violation of rights...

Everything was deemed from hearsay and that's ridiculously against my constitutional rights. Nobody but myself was called as a witness or testified under oath.

The conversation with Mary doesn't exist, I have all conversations recorded for proof.
The information the judge stated was highly incorrect and or construed.

She literally said in the court of law in front of all of us that CPS and the Police were more credible than ME and my HARD EVIDENCE.  Does she not understand that is "hearsay"?

She claimed ALL allegations were true, yet one allegation is my child being locked in closets which is confirmed by multiple parties isn't even possible.

The statements about the medication are not only untrue but is my fucking right whether he is medicated or not, NOT THE STATES.

She doesn't know anything about mental disabilities, she didn't know what an IEP was and she stated due to my child doing better somewhere else that's where he will stay without / where he is living, how the agency has alienated me, how my brother doesn't want them there and how there is absolutely no harm at home for him. She literally stood in front of me v away from me and place him elsewhere without any FACTUAL information.

Everyone she quoted needed to testify under oath or send a notarized factual statement. NO ONE, NO ONE BUT ME did this yet they're more credible than myself and my actual evi

Again, I have actual visual evidence as well as audio evidence to back up MOST of what I'm saying. They have nothing.

I'm extremely disappointed.



I do not agree to any case plan. I am not signing anything more about visitation with my son and that's my right, I am not being forced to wear a stupid mask to see my child and spe connection what so ever. I do not have to sign anything and I absolutely will not do so.

Can I still file a statement of objections?

How about another 388? What is going on is not in the best interest of the child...

Is it too late to disqualify the judge? Recuse?

827? Make the social workers provide actual proof?

332? Everything was based from hearsay...

361.4 needs to be also filed IMMEDIATELY.

If the appeal will take too long i'd like to file to return the case to disposition and get rid of this ridiculous judge.

I'd also like to file a sanction on the agency for violating their court order to visitation.

thanks
Thank you.



4.23.21

TO: Dylan (em.)

From: KJ



## Trial

**Kristen Michelle** <ken3tek.pestchance.graphm ah>
to Dylan

**Other issues to be addressed include whether CPS has made reasonable efforts to avoid placement which it is insanely obvious they have not.** The child is safe here as stated by multiple professional sources such as psychiatrists and therapists and teachers. Its also important to state **I did not have all of this information 7 days prior to trial as I was supposed to,** cps was still 'calling people' yesterday which leads me **to KEY WITNESSES being excluded from being interviewed and the initial report. Mitchel Kist.** My roommate who has been home 24/7 for months due to a broken leg gave cps and **the sheriffs a statement which was excluded from the report intentionally although** it is of the utmost importance as it is **DIRECT EVIDENCE** they chose not to include. Mitchell Kist **wrote a testimony however in my character references. If** he is home tomorrow I know he will testify. Please see.

I want you to understand the concept of time is difficult for children. it is an abstract concept and is gained gradually through living life with scheduled events, it is also suggested children with autism or other spectrum disorders which wrigley has will have a much more difficult time learning abstract concepts such as time. Feel free to ask the kid how long its been since he's seen mommy and his doggie. He might say 2 minutes. he migth say 20 days. he might say 20 years.

Wrigley is doing better in school, because he is medicated on meds that seem to be working. Him taking breaks is nothing new. I taught him that. He is just doing a much better job. I check up on him almost every day with his teacher and log into see his work. He's learning about the solar system right now.

if this doesn't go a way i want to ask the judge for a continuance and more time to consult with private counsel.



28

JULY 11, 2021
+ Danielle Stehurd

**Kristen Michelle** <kristen@kdotphotography.net>
to Danielle

Hi there, Here's some more contact information of my attempts and lack of responses from the department. Just an overview. If you need extra info please ask and I'll send immediately. Some screen shots of my attempts to contact him, mind you all calls since June 10th have been unanswered and Summer Thomas hung up on me on June 10th for singing a song to my son i've a wherever you may go" stating it was inappropriate. That's the last time I spoke to MY son. W2 is the number for my son, Wrigley. Summer is his caregiver and Yuko is his paternal grandmother. voicemails, I emailed her on and I left a packet of information on her porch on June 17. This included his visitation schedules so they are well aware.

On April 27 I emailed Social Worker Britney Meador stating the phone call situation was unacceptable and I was scheduled during work and or classes and gave her my schedule. I also asked for I was aware phone calls are not taken from my visits as she repeatedly told me.

May 7, Britney called when I working (she knew I was working) This was after my counsel spoke to DCFS counsel about visitation. I cried in desperation wanting to see my son on Mother's day. monitor. I emailed her from work so she knew I was trying to communicate with her.

Visitation schedule was not provided until May 9, the day before court. My son was removed February 19. By law, I'm supposed to see him within 3 days. It's been over 150 at this point. When I received the schedule, Britney Meador was my monitor despite telling me she applied for one. The schedule was unreasonable and I requested it be changed to be within reason.

May 19 I had a 3 hour virtual meeting with Britney Meador and Aurora Ayala (Supervisor) where they stated they'd move my son closer, Make reasonable visits, make sure I'm virtually speaking etc. I asked for a list of itemized items the department attempted in order to keep my son in the home, I asked for a list of reasons why we need monitored calls and visits, I asked for them to get for more than 2 min since where i called to tell her I STILL have not seen my son, she stated she would have it figured out by the end of the day and has never returned that call despite my many called aurora on June 4, June 9, July 6. None of these quetsions have been answered. My sons ipad has not been returned.

May 21, Emailed Britney Meador asking her to ensure I know where my son is, Asking her to make sure i'm etting my calls when he goes to grandparents, asking for information on when he goes

May 26 (this is in addition to a phone call a week prior with the same information) I gave Britney Meador a location list of more reasonable locations.

May 27, I wrote to supervisor aurora ayala and her supervisor tina luke letting them know what was going on.

May 27 I wrote to Britney Meador asking her how she will hold caregivers accountable for calls, why i need monitored calls, asking what the risk is. Here is a excerpt from that email.

I have also asked you many times and brought to your attention discrepancies with my son's placement, the caregivers, and the lack of communication yet no one has been held accountable, it is almost as if you don't even hear me. I have asked that you have the caregivers prepared for calls, I have aske which is a direct violation of our court order.

I have asked for direct information regarding why monitored visits are necessary, what are the risks? Concern? Threats? Danger? I have asked why I have not been informed of my son's whereabouts, appointments, health, and I have brought it to your attention that the services promised to us at our k unacceptable as far as a time span, it has also been 97 days since I've seen my son and up until today it had been 6 days since the caregivers have answered my calls telling my son I called outside of the "time frame" which is inaccurate to truth and reality.

I have asked for dispute resolution from your supervisors and I am still here with nothing. I am again asking questions, how is it "protecting" our family or keeping our family together? How is this not a direct obstruction and interference of reunification? How has this agency not set my family up for failure

Moreover, I asked for my son's tablet back which you stated since I dropped it off. It's my responsibility however I reminded you it is the job of the department to obtain his belongings which they FAILED to do. My son was without his school books for weeks until I dropped off a chest full of his school books department which failed to do so. Is 2 weeks without a laptop and school books acceptable? The department has however kept my son from coming home stating schooling reasons, it's interesting it only applies to me however when the department fails to provide the necessary equipment and books to m not even addressed. Since I did the job for the department, it is the department's responsibility to obtain the property and give it back upon request as all items WOULD have been documented by the social worker upon exit of my home and reentry of my home.

June 10 I wrote to csw britney asking her why she has not gotten back to me.

June 17, + 21 I wrote to yuko nagle. I send a link to a youtube video I made my son in desperation to communicate.

July 7th and 8th I wrote to CSW Britney Meador asking her to please get back to me

July 8th and 9th I wrote to supervisor aurora ayala and supervisor tina luke once again making them aware of what's going on.

I have not had a response from any of the above parties since May 7. My last email from the dept was May 7. The last time I spoke to my son's paternal grandparents was a week or two after his r or message.

July 7th and 8th I sent emails to the LA District Attorney and the Riverside District attorney over my visits. I have called the police department as well in the past. I'll grab those dates Wrigley was supposed to be back at my brothers by july 5th but has not been

June 10 i emailed wrigley he has not received.

July 1st i emailed emailed him he has not received.

June 28 i sent a book to randy joseph and summers apartment

June 18th i sent a weighted blanket to sumer and randys apartment.

June 12th i sent a leather journal with mother inscription to son to ron and yuko nagles home for wrigley.

June 13 i sent wrigley a package with pillows i made him with his dogs faces on them. Made with rhe same fabric as our couch so he could feel close to home.

June 18 court granted walk on request but stated I still get my visits and calls.

I have not spoken to my son since June 10th. I have not seen my son since February 19. I have not seen his face on a zoom since his birthday March 1.

A contract, which is what the agencys case plan and visitation is is not being upheld by their side therefore it should be null and void. Despite the fact I never signed anything, their "contract" is put in place to en parties fulfil their obligations as promised and when one party doesn't fulfil said obligations the contract should be void and or set aside, Right? The agency hasn't done shit. They have not kept any

case plaris.

The court did not provide me with a hearing the next working day or 3 days after my son's removal.

I was NEVER served (check, there are NO receipts of service)

I was not aware of allegations until the morning of court which is also the very same day I received the report, hours before hearing.

I received the first removal orders february 22 via email with no explanations no court stamp no seal, no signature from a social worker under penalty of perjury. they have the social workers na signature name is different than the social worker, I have no idea who that persons name is.

Also, The supervisors supervisors license is expired for 3 years or so.


–
Lot's of love and light,

Kristen Joseph

Owner/Photographer
www.kdotphotographybybkristen.com
www.instagram.com/kdotintechnicolor



5.10.21

TO: KJ (mom)

from: Dylan (esq.)

Last min info reports
provided to Mom morning
of hearings.

LMI Extern. ...

Colbert, Dylan - ...
to me

LMI

Dylan Colbert
...
Los Angeles Dependency Lawyers, Inc.
...
...
Main: (323) 262-2355
Cell: (323) 382-7508
Email: Colbert@ladinc.org

CONFIDENTIALITY NOTICE: The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure. If you are not the intended recipient or authorized individual and received this message in error, please notify the sender immediately and discard this email.

5. 2. 20ᵗʰ
TO: Dylan + Brooke
8/16/2021
from: Kristen Joseph

Wrigley ASAP Urgent - kristen@kdotphotography.net - kDot Photography Mail

## Wrigley ASAP Urgent



**Kristen Michelle** <kristen@kdotphotography.net>
to Dylan, Brooke

Hi Dylan and Brooke,

I'm sorry I'm writing both of you but I continue to feel not represented to the best of potential so I hope it's fair to tag you.

1. This has become insane. What I am going through is beyond torture and abuse. Am I on the Truman show?

2. I don't believe this situation can "wait". It's been waiting since Feb 19. My son is in TOWN. He is here. There is no reason they shouldn't have set up visitation with ME this week
monitor, instead they gave my visitation to his grandparents. I don't want my son constantly in a car driving for hours. That's not fair to him and it's unsafe. Cars are not safe. Why a
supposed to make things REASONABLE. Nothing, from how long the trial is taking, to having my son ripped from me, to placing him hours away, to giving a time to call during my
with me, to tricking me into doing stuff I legally don't have to do, to manipulating my child, to not letting me see him, to getting him to his grandparents in Long Beach but not to hi
absolutely demand all be held accountable.

3. Whatever the agency has done and said has made EVERYONE against me. My parents, his paternal grandparents, everyone has me blocked from even contacting me. Ive been I
weekend when I stated I was blown away by their disrespect.

4. This is and NEVER was about helping us.

Why are their attorney's at the children's law ctr married to people that are the head of adoption agencies? Is there something i'm missing as to what a public defender can do for us
attorney's schooling these judges left and right? No, I'm not saying there is involvement in any conspiracy, I'm just wondering if I'm missing something.

Why aren't the workers and agency and even my brother being held in contempt? They are interfering with reunification and visits intentionally. They set us up for failure from the s

Why haven't we filed for a show cause motion to dismiss the case?
Or why haven't I been told about guardian at litems that can help my family get back together asap?
Why aren't we subpoenaing the original social workers? how about my neighbors? My room mate? His paternal grandparents? My ex bf of 5 years? People who have walked with my
parenting and what i've done to help? His grandparents to question them on the lies they've been fed? If they've had the decency to speak to me? If they've told their entire neighborl

How about a discovery motion to challenge the OG social workers?

I understand there is only so much professionals can care about and understand but PLEASE understand this is the absolute WORST thing for our family.

1. They have manipulated everyone against one another (is that healthy?)
because of this I've lost child care. Is the agency going to compensate me for this? His paternal grandparents babysat, now they no longer will be doing so...I couldnt care less if we ev
work long days? Do I quit? Lose everything?

2. My son has services that he can't start where he is. Lots of them. Services within his iep, starview, a psychiatrist at my office ready to see him
He also has friends, lots of them. It's cool, just ruin people's lives.

3. My son wants to come home and they've told him everything about what is going on. He tells me 'im not allowed, i can't, i this" those are horrifically negative terms to talk about sor
understand they're making my son believe I'm bad, or i've done something wrong? Do they also understand after a ton of cop calls and cps visits my VERY intelligent child began usi
he can call cps or the cops if he gets even minorly upset? Regardless he has told Amanda his baby lawyer that he wants to come home, she's turned around stating opposite like every

4. Our family is VERY healthy, he's over there eating chips, drinking pop, eating pizza. Is this a good set up for him coming home? He's going to hate me. Is this how they planned or
that's cool too, right?

5. My family also has LIMITED media. Everytime I call he says he's been playing video games all day. His fits that lead up to this were ALLLLLL based on me limited or removing m

6. He is on a STRICT schedule at home. He goes to bed by 830 every night and 10 the latest on the weekends , he is not on a schedule there, he constantly tells me how he stayed up t

7. When I speak to him he is on speakerphone, usually with the other boys running around in the background yelling. They do nothing to make the place calm and quiet for him to ha

8. Yes, i've gotten pissed. Yes, I've gotten snotty, Yes, I've been not exactly nice, But can you blame me? My kid is 5 minutoes away I haven't seen him in months, and NO ONE IS HI

Lastly, This is to Dylan:
Telling someone to just "do what cps says" or "what they tell you" or " you have to just go through it" is the equivalent of all the zombies out side telling you "just wear your mask" ...'
your constitutional rights but it's for protection" ..." " you must wear a mask it's for the benefit of you" when they don't have Dr. degrees or the right to suggest anything medical on :

32

324.21

TO: Dalida V. Attorney
from: KJ

Re: Wrigley Joseph

**Kristen-Michelle Joseph** <kristenmichellephotography.net>

To Dalida

Hi Dalida,

i have been reaching out to you, your firm, the emails you gave me for 10 days now without a single response. In that time of not having representation a lot has gone wrong and i'd really appreciate someone getting back to me

Thanks.

Wed Mar 24 2:31 PM

exhibit B

(ADA)



Case 2:21-cv-06654-SVW-ADS   Document 1   Filed 08/17/21   Page 37 of 50   Page ID #:37

August 9, 2021 ( 2nd Ada accomodations request)

## ADA ACCOMODATIONS

 **Kristen Michelle** <kristen@kdotphotography.net>
to ADACoordinator

Attached is a request for ADA accommodations.
Thank you
Kristen Joseph


Lot's of love and light,

Kristen Joseph







📄 MC 410 for kriste...

35

APPLICANT'S INFORMATION TO BE KEPT CONFIDENTIAL                                    **MC-410**

| | |
|---|---|
| **APPLICANT** *(name):*  Kristen Joseph <br> **APPLICANT is** ☐ Witness  ☐ Juror  ☐ Attorney  ☒ **Party**  ☐ Other *(Specify)* <br> Person submitting request *(name):* Kristan Joseph <br><br> APPLICANT'S ADDRESS:    5434 Premiere ave <br> Lakewood, CA 90712 <br><br> TELEPHONE NO.: 562-314-8411 | |

| | |
|---|---|
| **NAME OF COURT**   Superior Court of California, County of Los Angeles Juvenile Dependency/Adoption Division <br> STREET ADDRESS:  201 Centre Plaza Drive. <br> MAILING ADDRESS:  Edelman's Children's Court 201 Centre Plaza Drive. Monterey Park, CA 91754 <br> CITY AND ZIP CODE:  Monterey Park, CA 91754 <br> BRANCH NAME:  Central District | **RECEIVED** <br><br> *JUL 0 6 2021* <br><br> *os Angeles Superior Cour* |

| Judge: | Honorable Judge Tamara E. Hall |
|---|---|

| Case Title: | Joseph, Wrigley |
|---|---|

| | |
|---|---|
| **REQUEST FOR ACCOMMODATIONS BY PERSONS <br> WITH DISABILITIES AND RESPONSE** | CASE NUMBER: <br> 21CCJP00852A |

**Applicant requests accommodation under rule 1.100 of the California Rules of Court, as follows:**

1. Type of proceeding:   ☐ Criminal  ☐ Civil  ☒ Other: Juvenile Dependency

2. Proceedings to be covered (for example, bail hearing, preliminary hearing, trial, sentencing hearing, family, probate, juvenile): Hearings, Trials, Family, Juvenile

3. Date or dates needed *(specify):* <br> All future proceedings along with all interactions with DCFS officials regarding my case

4. Medical condition necessitating accommodation *(specify):* I suffer from anxiety and ADHD that has been exacerbated by these stressful proceedings. I can have difficulty comprehending judicial language and retaining all information. I can become physically and visibly ill in stressful situations

5. Type or types of accommodation requested *(specify):* Permission to use inconspicuous recording device; to be used for personal notes of proceedings. ADA advocate to be present via zoom/telephone. ADA will provide emotional support and notes to ensure understanding of proceedings. A break every 20 minutes or as needed.

6. Special requests or anticipated problems    *(specify):* ADA advocate to provide emotional support and to take notes. I have difficulty focusing and retaining information during stressful court proceedings and DCFS meetings.

ADA
Att

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: Thursday, July 1st 2021

Kristen Joseph

| | |
|---|---|
| (TYPE OR PRINT NAME) | (SIGNATURE) |

### RESPONSE

| The accommodation request is **GRANTED** and the court will provide the · <br> ☐ requested accommodation, in whole <br> ☐ requested accommodation, in part *(specify below):* <br><br> For the following duration: <br> ☐ For the above matter or appearance <br> ☐ From *(dates):*        to <br> ☐ Indefinite period | The accommodation is **DENIED** in whole or in part because it <br> ☐ fails to satisfy the requirements of rule 1.100. <br> ☐ creates an undue burden on the court. <br> ☐ fundamentally alters the nature of the service, program, or activity. <br><br> For the following reason *(attach additional pages, if necessary):* [See Cal. Rules of Court, rule 1.100(g), for the review procedure] <br> ☐ The court will provide the alternative accommodation as follows: |

Date response delivered in person or sent to applicant:

| | |
|---|---|
| (TYPE OR PRINT NAME) | (SIGNATURE) <br> ☐ SIGNATURE FOLLOWS THE LAST PAGE OF THE RESPONSE. |

Page 1 of 1

Exhibit C

(employment)





Kristen Joseph has been with Jim Kennedy Photographers for over 5 years now. Due to the type of work we do some of our clients book years or months in advance and most of our weddings take place on the weekends (Fridays thru Sundays) but are not limited to just those day. Our Photographers schedules are very packed during this year especially after the lockdowns ended and weddings began to book at a staggering number. Kristen is a valued team member and one of our full time photographers.

*Jim Kennedy*

Jim Kennedy

1830 Fullerton Ave
Costa Mesa, CA 92627
(949) 629-3222
studio@jimkennedyphotographers.com

exhibit d

( Allegations,
   hearings+
      findings)



# Allegations, Hearings, Findings

February 26, 2021 was the first time I was able to view the allegations against me. I was provided the report within hours of my hearing and did not have adequate time to even read it.

Jurisdictional hearing began April 23, 2021 and concluded on May 10, 2021.

On May 10, 2021, Judge Tamara E. Hall read the court's findings. Here is a summary of said findings and a response I was never  allowed to provide the court.

Although "preponderance of evidence" is required at Detention hearing, "clear and convincing evidence" is required to continue to detain minor at the disposition hearing. "Clear and convincing evidence" was not something the court had. Judge Tamara e. Hall read the decisions stating "The court finds by PREPONDERANCE of evidence". This shows she not only doesn't understand dependency laws, but made a decision to rip our family a part based on hearsay and a "preponderance of evidence" putting minor in serious detriment of unnecessary trauma.

**Mother's Response to Removal order:**

   a. Report states mother was notified of all information on Saturday Feb 20, 2021. This is inaccurate. Mother received a phone call stating the child was detained and the hospital would not provide information to Mother in regards to child.

   b. Mother has to EMAIL, and CALL social worker Pamela Jones AND Sharica Pleasant in order for them to produce documentation.

   c. 2.22.21 @12:43, Sharica Pleasant sent a removal order via email to Mother. As shown in the exhibits she states the court will contact me with more information. In the report she states she provided me with that information.

   d. Order states there aren't any family members to care for child, this is inaccurate

   e. Order states the child is in danger of physical or sexual abuse, an allegation written into the order by Ms. Pleasant with zero evidence, testimonies, or reason to believe this was true.

   f. Removal orders without a warrant must show substantial evidence and risk to the child as exigent circumstances are necessary for said order, exigent circumstances were not present as the child was on a hospital hold.

   g. Hospital hold would have provided adequate time for the Department to act upon due diligence and assist and provide family with services they desperately sought.

   h. Further information (including allegations) were not provided to Mother until the detention hearing on February 26, 2021

   i. Findings and Orders had NO additional information attached when provided to Mother.

## DETENTION REPORT:

Provided to Mother the morning of the detention hearing.

DCFS RECOMMENDATIONS:

-Detain child (There was not substantial or sufficient evidence for this recommendation)

-Monitor visits (Mother and child had spent nearly 9 years together daily without the need for a monitor, child was not in imminent danger and monitoring visits and calls only made it difficult for mother and child to have a relationship)

-Submit to random drug testing and treatment (Mother has never used illegal drugs and does not drink alcohol. Drugs and alcohol are unrelated to the case and have no standing to be forced upon Mother)

-The child is to receive services (The child was removed from services he already had in place)

**Reason for detention recommendation:**

DR states Mother is physically abusive to the child however does not state what that "physical abuse" is. The DR states the child is in a great deal of danger and also does not state what that danger may be or what the department fears it may be.

DR states child is medically neglected and has ADHD. What they failed to research and investigate is the child is diagnosed with ADHD, Possible Autism, Anxiety, Oppositional defiant disorder, and a mood disorder unspecified. He also suffers from sensory dysregulation. A statement of medical "neglect" was mere hearsay and fabricated by the department. Prior to the Jurisdiction hearing, Mother provided attorneys and social workers with over 1000 papers of documentation of medical intervention they had sought and been provided with in the past. This evidence was physical and not hearsay and evidently was missed.

DR states Mother emotionally abused the child excluding him from the home and ensure his mental health treatment. The reason the sheriffs and DCFS were called to the home in the first place is a clear and evident display that MOther was in fact reaching for help and assistance. As stated above, Mother provided Dept with a myriad of documentation to dismantle this claim. The child exhibits many of the behaviors stated in the DR however Mother is and always has been the best she could be for the childs mental health needs. Child excludes himself from the home having massive meltdowns and refusing to come inside. When asked to come inside he would scream and yell and dysregulate potentially putting himself in harm. In order to ensure childs safety, Mother purchased a home surveillance system with 5 cameras surrounding the home enabling her to watch her child during a meltdown without the risk of dysregulation.

DR states Mother withheld medication and other medical intervention from the child. This is mere speculation and opinion. Mother has every right to make decisions regarding the rearing of her own child however mother did not withhold anything from child and has adhered to recommendations from providers at all times. When Mother did not approve, Mother would take the steps and work with

providers to find a recommendation that they agreed on showing mother takes childs mental health seriously and ensures his safety at all times.

DR states mother's mental health issues render her unable to provide care for her child. Sharica Pleasant and Pamela Jones are not Doctors, Nurses, or medical professional of any sort. This would be malpractice as they do not posses the legality to diagnosis, or assess a persons mental health. This is also discrimination under the ADA.

DR states mother showed great concern for her child

DR states family lives in a well kept environment, a 3 bedroom home that appears to have all essential needs and necessities

DR states SCSW called Paternal grandparents providing them with statements Mother never stated. SCSW stated Mother claimed PTG were no longer involved with the child due to his behavior. This is a falsified statement. Mother stated "Due to the increase of negative behavior, PTG have rejected child coming to his typical 1.5 day stay on the weekends in fear of his meltdowns multiple times recently". Mother also stated with text message proof that she had reached out asking for help prior to 2.19.2021 in which PTG simply could not. Never was it stated they were not involved. In fact, the exact opposite was stated when Mother asked the social workers to kindly leave them out of this situation as they have asked mother prior and mother would like to respect their wishes as she respects them sincerely.

DR states mother REFUSED information about childs father. Mother did not REFUSE, Mother does not know as mother has not spoken to father since 2012.

DR states child denied all allegations

DR states neighbors McNeils stated information Mother has since confirmed they did not. As neighbors they are easily accessible and are the families biggest advocates. Dawn McNeil herself is a law enforcement officer and the family considers themselves semi close to their neighbors.

DR states family has an IEP, and services

DR states they reached out to Ms. White at childs school. Mother told social workers they had issues with Ms. White in the past and she has threatened the family and made false reports to CPS. They reached out to her anyway? These false reports were debunked with photographic evidence mother provided that a "bruise" on childs face was a "marker". Mother told social workers that she had been battling the school for years to get the adequate servies and have filed multiple complaints with the DOJ and DOE and ADA against childs school for discrimination as well as continuously calling the sheriffs on her child

DR states the school provided them with statements that law enforcement was only called on child when false allegations to dcfs were made. This is incorrect, There is photographic, and video evidence, evidence in writing (emails) between Ms. White and Ms. Joseph and a subpoena to law enforcement could have quickly debunked this.

DR states they tried all possible remedies (which they did nothing) and the child would not be able to

stay home safely.

**2.23.2021- W&I 300 (a)- Physical Harm-Counts 1**

Mother physically abused child. Mother has locked the child in closets without food and intimidated the child with weapons. The child was zipped tied on prior occasions.

1. 1 count of physical harm was sustained. Using zip ties was stricken as circumstantial. Despite the fact mother and son testified none of these allegations besides the zip ties were true and factual they were still found true by "preponderance of evidence". I find this questionable since there is absolutely zero evidence to sustain such allegations. Mother testified under oath that these allegations were false.

**Mother's Response #1**

    a. Both Mother and child testified these allegations were false. The only supporting evidence is a machete that was in a locked case hanging behind the door. The machete has been used on camping trips and to cut down trees and has visible greenery stuck within the blade. The family are avid outdoor enthusiasts and have many tactical supplies. The reason the item was inside the home was due to a semi-recent robbery of the home and vehicle. It was simply brought inside for protection against potential intruders. This item was in a closed safety case. Police reports back up these burglaries. This was a completely fabricated statement.

    b. Mother never stated fear of her child to the extent of sleeping with weapons. Mothers only fear was not being provided the reasonable accommodations and mental health care to aid in minors disabilities therefore, This is falsified and would have been cleared up if the police action camera footage had been subpoenaed. The failure of subpoenas further indicates petitioners ineffective counsel.

    a. Mother and son both testified as to being locked in closets being false. Mitchel Kist (house mate) also stated he has never seen anything of the sort. Wrigley has never been without food or necessities.

    b. Mitchel Kist provided witness statements to the department on February 19, 2021. His statements were strategically omitted from the report. This is a suppression of evidence.

    c. DI Linda Bossenmeyer visited the home of Wrigley and Kristen Joseph on March 30, 2021. In her report she verifies there are curtains on Kristen's closet, Wrigley's closet cannot completely close and all other closets have shelving units inside which indicates the allegation is a fabrication and was confirmed by the

county social worker investigator

d. Statements and allegations were falsified, omitted, exaggerated and fabricated by initial DI social workers. These social workers committed perjury in order to obtain a removal order and without warrant, endangering our family. This is a direct violation of minors 4th and Mother's 14th amendment. Coercing entry into our home and humiliating our family is a violation of rights and privacy. It is clear and stated in the report that I, Mother, did not want the social workers in our home.

f. In the Detention report, Sharica Pleasant states she was at the home multiple times leaving her cards. I cannot deny this but I can say we never received her cards other than the day we "physically" saw her and spoke to her.

e. Jurisdiction made a fundamental and reversible error. As the above states, The evidence is insufficient to support any findings. Furthermore, a finding of "emotional harm" will not support jurisdiction under section 300(a) or (b). This case involved no risk factors justifying the court's orders declaring the children dependents, removing them from their Mother's custody and restricting her to monitored visits and calls.

*Daisy H.*, (2011) 192 Cal.App.4th 713

Court may not take jurisdiction under 300(a) and (b), on the grounds that the children were at risk of "physical and emotional harm," when the evidence is insufficient to support either finding.

## 2.23.2021- W& I 300 (b) - Failure to protect 1-5 counts

Allegations state Wrigley is medically neglected. Such allegations include not being consistent with medical treatment and failure to follow through with appointments. Statements also include the mother failing to provide the child with medication. This allegation is expansive and shall require more direct definitions.

The report states the child was placed in endangering situations due to being excluded and locked out of the child's home.

Mother failed to make a plan for ongoing care and supervision.

Mother has mental and emotional problems which renders the mother unable to provide regular care and supervision of the child. Mother has failed to receive medical treatment for said mental and emotional problems.

2. 1-5 counts of failure to protect were sustained. The physical paperwork admitted into evidence clearly outweighs the "preponderance of evidence" suggested by the court however these allegations were still substantiated despite evidentiary backing to the contrary. These however are fundamental reversible errors.

## Response # 3

a. Suggesting a parent is incapable of parenting efficiently due to mental illness or disorders is a violation of constitutional rights and a direct discrimination according to the American's with Disabilities Act. Furthermore, the certified letters from Mother's therapist and Psychiatrist prove this allegation false.

Included you will find evidence of certified letters from Dr. Sabrina Sandoval and Elise Lundeen stating that continuous medical treatment and therapy since early 2017. Both gave statements to the DI. Both stated they don't see a risk of mother's mental illness interfering with parenting. These are two professional written, and spoken testimonies not taken into account. Both stated they know I have sought necessary medical treatment for my son over the years, and both stated they have seen intense love and bonds between mother and child yet this information was ignored or omitted. As shown in the evidence, Dr.
Sabrina Sandoval has been practicing since 2007. Lastly, the diagnosis I have obtained over the years have been consistent and do not hinder my ability to parent. As a responsible parent when I felt I needed extra assistance, I myself reached out to my clinic in request of pharmaceutical intervention in which I have been consistently following since prescribed.

Initial DI's were provided this information on February 19, 2021. They in fact even viewed prescription bottles. The information written in the report is not simply fabricated, it's a knowingly fraudulent claim. Additionally, this is direct confirmation of ineffective counsel as petitioner was not made aware of the ability to correct the report or challenge allegations within the report. I do believe that a deputy was present during most, if not all of DI's questioning. Again, this would be settled if the action camera footage were to be subpoenaed.

Section 504 of the Rehabilitation Act of 1973 (Section 504)2 and Title II of the Americans with Disabilities Act of 1990 (ADA)3 protect parents and prospective parents with disabilities from unlawful discrimination

The Supreme court ruled that there is a presumption that a fit parent acts in their child's (offsprings) best interests, not the state or corporation of child protective services. - Parham v. J.R., 442 U.S. 584, 602; There is typically no reason for compelling interest for the state to inject itself into the private realm of the family when a fit parent is present. - Reno vs. Flores, 507 U.S. 292, 304.
The state may not interfere in child rearing decisions when a fit parent is available. -Troxel v. Granville, 530 U.S. 57 (2000)

a. Information regarding a child being excluded from his home is exaggerated and is a misrepresentation of the truth. This could be verified by key witnesses who provided sheriff's testimonies as well as DI testimonies however this information seemed to be intentionally omitted from the report. This is a half-truth without proof, only hearsay.

Child has massive meltdowns where he himself exits the home. He would spend hours on the home's fence, front lawn, or next door neighbors lawn screaming obscenities. Anytime Mother would attempt to get him inside he would violently refuse.

The specific time in question, Mother chose to avoid any danger or violence and allowed the child to fulfill his desire to release his frustration outside. Mother had installed multiple surveillance cameras and Mother's work station was at a window in the home (photos provided) Mother could see the child and verify the child's safety. When passersby walked by he would state he was locked out of the home. Mother used her cell phone to capture this on video as clearly looking right at the child still able to provide assurance of safety. Said time in question, Deputy Anderson arrived. I, Mother, Upset by the lack of help provided as I continuously reached out vented to Officer Anderson who in turn said" Put a damn tracker on this kid already. As long as you can see him it's fine" and drove off.

Child has never been locked out of his family home. In fact, the family home has a lock box with a key to the home outside the front door provided by Wag! Dog walking services. Furthermore, supposing the child was locked out which he was not, his family home has a garage turned into an additional living room to the home and the door does not lock. Again, supposing the child was indeed locked out he would have access to a fully functional and safe area inside the home. To clarify, the child has never been locked out of the house.

This information was validated by neighbor and house mate testimonies yet omitted from the report. Both parties are still available to testify.

The "Every student succeeds act" states children are allowed to walk alone to and from school, what happens if this happens outside of school hours? Very few expert opinions have been able to pinpoint an exact age children should be when they go out alone because each child, family and situation has so many variables however the age range falls between age 8 and 12. Wrigley Joseph was nearly 9 years old at said time and falls within that range.

a. Hundreds, if not thousands of documents were submitted by Mother to both her attorney and the DI with the agency (Linda Bossebmeyer) regarding medical treatment of child dating back to 2015. DI Linda Bossenmeyer continued to reach out requesting certain documents that had previously been provided. Once being reminded she stated, "You submitted so much paperwork" This would suggest the agency was unable to accurately go through all provided documents verifying the inaccuracies with the allegations which are painfully deceitful. The truth is, Mother has sought correct diagnosis and treatments since 2015 in which many were denied. Mother began seeking treatment with the Regional Center in 2015 in which her child was denied stating he only exhibited 2 of the "spectrum" behaviors. Navigating a broken system isn't simple yet Mother never gave up and continued to seek services. Many she obtained, many were denied. Mother has always sought multiple opinions which would suggest being a caring