and concerned parent rather than a neglectful one.

When the family would find a therapist or Psychiatrist, Mother would pay close attention to whether said practitioner was qualified for her son's specific needs. If they weren't, Mother would continue seeking appropriate practitioners. Mother and Child have participated in years of different therapy including talk, PCIT(Parent/Child interaction therapy), Play Therapy, CBT, and ABA.

Mother battled child's school for services for years even taking the situation to much higher levels. The evidence was included that disproves this allegation without a shadow of a doubt. Substantiating such allegations is inconsistent with the hard proof evidence.

a. Denying the child medication is a misrepresentation of the actual situation and a quarter-truth. Child's first prescribed medication was not approved for his age by the FDA which made it very difficult to obtain. Mother tried many different pharmacies, consulted with the child's pediatrician and spent countless hours on the telephone attempting to obtain coverage from the child's insurance providers. This information is documented and was submitted to evidence.

b. Once finally approved, Child was provided with medication as directed. Medication was still difficult to obtain so Mother would get a larger prescription from the child's pediatrician and break the pills with pediatrician discretion. Pediatrician retired in December 2020 and Mother wanted to subpoena her, yet this never occurred.

c. The family was misrepresented by statements suggesting Mother withheld ADHD medication from the child. Yet another "half-truth" wildly misrepresents the family. After yet another hospital stay they were provided a new psychiatrist whom they were getting to know and were actually liking. She was kind and they believed it may be a good fit. Said Psychiatrist prescribed a stimulant medication only days prior to the child's removal from the home. Mother did indeed attempt to fill said prescription yet again, it was delivered to a pharmacy that did not accept child's insurance. Pharmacy printed paperwork and handed it to Mother verifying this information which was submitted to both the Mother's attorney and DI. It is unreasonable to exclaim the withholding of medication when the medication was very recently prescribed. Mother called the psychiatrist the next day and left a message verifying the need for a new prescription submittal. Due to the nature of the medication "controlled substance" this medication isn't easily transferable from

pharmacy to pharmacy, an entire new prescription needs to be submitted to the correct pharmacy.

The initial phone call from Kedrin Hospital after the child's removal was with the Nurse Practitioner who questioned the mother as to why the child was prescribed stimulant medication. Mother told NP she was unable to obtain medication in which NP stated "Good, He shows extremely aggressive behaviors and a stimulant although will help with ADHD will certainly exacerbate these behaviors". Mother erring on the side of caution doing adequate research and getting multiple opinions is a testimony of the good and concerned parent she is rather than the contrary.

The Supreme court ruled that there is a presumption that a fit parent acts in their child's (offsprings) best interests, not the state or corporation of child protective services. - Parham v. J.R., 442 U.S. 584, 602; There is typically no reason for compelling interest for the state to inject itself into the private realm of the family when a fit parent is present. - Reno vs. Flores, 507 U.S. 292, 304. The state may not interfere in child rearing decisions when a fit parent is available. -Troxel v. Granville, 530 U.S. 57 (2000)

    a. Mother had sought an IEP and services from the public school system beginning in early 2017. Mother and child were denied services at this time and Mother did not have a strong advocate guiding her through this very difficult process. Following the initial IEP denial, Mother had many meetings with Principals, Counselors, and those in the district office seeking the appropriate services for the child. Mother was continuously denied resulting in many calls to the local sheriffs on the child made by the school. Rather than granting the child the iep and special educational needs for a FAPE (free appropriate education), his school indeed violated the child's rights and traumatized the family while Mother desperately fought against such vile conduct by school officials. Mother's consistent battle with her childs public school backed by a plethora of evidence suggests the contrary when it comes to not continuing the child in necessary services. Mother has always kept the child in necessary and prescribed services and gone beyond seeking more while continuously being denied.

Eventually in 2019 Son was granted an IEP. Once granted an IEP, the child is protected under the ADA and considered disabled. Once the IEP is signed, the school must abide by this IEP by law. In 2020 our world experienced a health crisis, the covid-19 pandemic. Child was denied much of the length of the pandemic the services lawfully promised to him. Mother reached out repeatedly in order to obtain these services and showed concern for the escalation of behavioral

issues they were experiencing at home. Under the law, Once the school is made aware of said situations it is their lawful responsibility to intervene providing the necessary services in a reasonable timely manner. This did not happen. Despite Mom reaching out to the school and district beginning in June of 2020, Services were not provided until December 2020. These services were never actually provided, they were simply approved. We soon began the assessment process. I provide you with this information to note Mother was consistent with obtaining services and keeping on top of treatment yet was failed by the state. The family has faced discrimination and torment at the hands of the public education system and Mother and Son are being persecuted over it.

During Mother's trial and testimony, Judge Tamara Hall asked Mother what an IEP was. The fact the justice is unaware of the IEP and it's protections is a testimony of the justices biased decisions.

The right to a **Free Appropriate Public Education (FAPE)** is an educational entitlement of all students in the United States, guaranteed by the Rehabilitation Act of 1973[1][2] and the Individuals with Disabilities Education Act (IDEA).[3]

FAPE is a civil right rooted in the Fourteenth Amendment, which requires schools to provide students with disabilities special education and related services, at public expense, designed to prepare those students for the future.[4][5] The right to FAPE was developed via various statutes as well as case law, and its implementation has evolved over the years.

As stated above, the child is not in any risk of danger or medical negligence as shown with clear evidence, not a preponderance. The seizure of a child from his family home was unwarranted and unreasonable backed by hard evidence rather than hearsay and double hearsay.

### 2.23.2021- W&I 300 (c)- Serious emotional damage-Counts 1

Child's Mother has emotionally abused the child by excluding the child from the home. Child has mental and emotional problems and is diagnosed with adhd. Child exhibits self harming and aggressive behaviors towards others. Child has been previously hospitalized for said problems. Mother failed to ensure the child participated in treatment and failed to follow through on medical appointments. Mother failed to provide the child with medication. This emotional abuse puts the child at substantial risk of suffering severe emotional damage as evidenced by severe anxiety, depression, withdrawal, and aggressive behaviors toward others.

### Mothers Response

1. As previously stated there are major inaccuracies in this backed by evidence. The first

inaccuracy is in relation to child's hospital stays. Mentioning the hospital stays show's
Mother had reached out for help and treatment many times. Child's initial hospital stay was
sought by Mother herself who brought the child to the treatment facility with the assistance
of a neighbor and checked him into the facility herself. Mother visited the child daily and
spoke on the phone often. Mother ensured other loved ones called and visited, providing the
child with the sense of love and support. Mother's priority has always been focused around
ensuring the child's mental health and stability and avoiding situations and feelings she
herself experienced in childhood which include neglect.

2.Mother reached out to paternal grandparents prior to signing the
admittance to Del Amo behavioral. They declined to have any input and did not visit the child
in the hospital once, nor did maternal grandparents.

3. As previously stated, Mother did NOT fail to participate in any
treatments provided to the child or family. There is a lack of evidence suggesting said
"treatments" first and foremost, and secondly Mother struggled to acquire services she sought
due to the lack of mental health care geared toward children. There are no significant treatments
or therapies offered to Mother and Child that Mother declined or "failed" to participate in. This
allegation is inaccurate to say the least.

Wallis v. Spencer, 202 F.3d 1126 (9th Cir. 2000)
"In cases of alleged child abuse, governmental failure to abide by constitutional constraints may have deleterious long-term
consequences for the child and, indeed, for the entire family. Ill-considered and improper governmental action may create
significant injury where no problem of any kind previously existed."

I, Mother of Wrigley Joseph state under penalty of perjury that all information is true and
accurate to the best of my knowledge. I emphasize the state is not permitted and lacks
jurisdiction to determine the care of my child who has a fit, available, loving, and caring parent.
Our family has been misrepresented and the department has failed and traumatized our
family breaking the family bond and unit.
I, Kristen Joseph state under penalty of perjury, That I am a fit and proper person and
Mother who has always sought the absolute best care for her child and will continue to do so
forevermore.

exhibit e

(removal orders)



*(handwritten left margin)* Feb 28, 2021 from Social worker to: mm

8/16/2021                                    Removal Order Documents - kristen@kdotphotography.net - kDot Photography Mail

ocuments     External     Inbox

**Sharica Pleasant** <PleasS@dcfs.lacounty.gov>
to me, Pamela

Good afternoon,

I apologize for the delay in the delivering of this message. Please see attached Findings and Orders for yourself and Wrigley Joseph. Court will contact you with the official Court He
this time. If you have any questions, please feel free to respond to this email directly or contact Sharica Pleasant at 21-604-3551.

Thank you,



**Sharica Pleasant**
Children's Social Worker
South County DCFS
4060 Watson Plaza Drive
Lakewood, CA 90712

Phone: 562-497-3568
Mobile: 213-604-3551
Email: PleasS@dcfs.lacounty.gov
www.dcfs.lacounty.gov

*Safe Children. Healthy Families. Strong Communities.*


Sign up for DCFS News

*(handwritten)* 52

**Child(ren)'s Name(s) and Description(s):**

Wrigley Joseph, **DOB:** 3/1/2012, Causian male black hair, 4'7", 90lbs

| PETITIONER OR ATTORNEY | | |
|---|---|---|
| DEPARTMENT OF CHILDREN AND FAMILY SERVICES<br>    South County DCFS Office<br>    4060 Watson Plaza Drive<br>    Lakewood, CA 90712<br>    CSW Sharica Pleasant | PHONE:<br>(562) 497-3500 | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES | | |

| CHILD(REN)'S NAME(S)<br>  Wrigley Joseph | DOB(S):<br>    3/1/2012 | |
|---|---|---|
| MOTHER'S NAME<br>Kristen Joseph | FATHER'S NAME    LEGAL GUARDIAN'S NAME<br>Paul Nagle (<br>whereabouts<br>unknown) | |
| APPLICATION AND DECLARATION IN SUPPORT OF:<br>☒ AUTHORIZATION FOR REMOVAL<br>☐ MEDICAL/SEXUAL ABUSE EXAMINATION<br>☒ ORDER AUTHORIZING ENTRY INTO LOCATION/ HOME FOR REMOVAL<br>   PURPOSES<br>   ☐ NIGHT SERVICE OF AUTHORIZATION FOR REMOVAL PURPOSES | | APPLICATION NO.:<br>RO 39855<br><br>CASE NO (if applicable):<br><br>DEPT. NO.: |

## FINDINGS AND ORDERS

The Court has read and considered the application and the supporting ☒ declaration of the social worker, ☐ DCFS report, ☐ verified juvenile court petition, ☐ additional attached information presented to the Court by the social worker in this matter, and the Court makes the following findings and orders based on the information contained therein:

● having read and considered the 15 page statement of cause, pages 1-15 of 29 page document

*CGE*

**FINDINGS:** (If denying request(s), proceed directly to page 9)

(1)   ☒ **AUTHORIZATION FOR REMOVAL**

There is probable cause to believe that the child is a person described in Welf. & Inst. Code § 300; and there is probable cause to detain the child from his/her ☒ mother, ☐ father, ☐ legal guardian and temporarily place care of the child with DCFS pending the Welf. & Inst. Code §319 hearing because there is probable cause to believe there is a substantial danger to the safety or to the physical or emotional health of the child, and that continuance in the home of the parent(s) and/or legal guardian, is contrary to the child's welfare, due to one or more of the following:

The child requires immediate medical care.
The child is in danger of physical or sexual abuse.
The child's physical environment poses a threat to the child's health or safety.
The child is suffering severe emotional damage.
The child has no parent, guardian, or relative willing to provide care for the child.

Also, there is probable cause to support the finding that there are no reasonable means to protect the child's safety or physical health without temporary removal from the physical custody of the parents

CHS 1022734 1

6 - RO 39855

53

or guardians pending the Welf. & Inst. Code § 319 hearing. Therefore, a protective custody warrant should issue for the child pursuant to Welf. & Inst. Code § 340 subd. (b)se, pages 1-15 of 29 page document

(2)  ☐ **MEDICAL AND/OR SEXUAL ABUSE EXAMINATION PURSUANT TO WELF. & INST. CODE § 324.5 and/or PENAL CODE § 13823.11:**

The child requires a medical exam by a licensed medical practitioner who has specialized training in diagnosing and treating child abuse and neglect in order to determine whether the child has been abused or neglected.

(3)  ☒ **ENTRY INTO THE LOCATION/ HOME WHERE THE CHILD IS LOCATED**

There is probable cause to believe that the child is a person described in Welf. & Inst. Code § 300, the child will be found inside the location stated below when this authorization for removal order is executed, and that entry into the location(s) by DFCS and/or law enforcement investigators is necessary so long as it complies with Penal Code §§ 844 and/or 1531, such that entry into the child's home by DFCS and/or law enforcement investigators is required in order for DFCS and/or law enforcement investigators to remove and/or interview the child.

The child is currently believed to be located at the following address(es):
LAC+USC Medical Center  2051 Marengo St., Los Angeles, CA 90033 and/or 5434 Premiere Ave., Lakewood, California,

☐ **NIGHT SERVICE (10 p.m. -7 a.m.) – Good Cause:** Good cause for night service of this authorization for removal has been established in the supporting affidavit.

## ORDERS:                                    •

(1)    ☒ **ORDERS AUTHORIZING REMOVAL:**

A protective custody warrant is issued for the child named above pursuant to Welf. & Inst. Code § 340, subd. (b). DCFS is authorized to remove the child named above and the child shall be detained from his/her ☒ mother, ☐ father, ☐ legal guardian, pending the Welf. & Inst. Code § 319 hearing, unless upon further investigation mandated pursuant to Welf. & Inst. Code § 340, subd. (c), DCFS determines that services could be put in place to maintain the child's safety in his/her home pending the Welf. & Inst. Code § 319 hearing. If services can not be put in place to maintain the child's safety in his/her home pending the Welf. & Inst. Code § 319 hearing, then continuance in the home is contrary to the child's welfare as probably cause has been presented showing there is a substantial danger to the safety or to the physical or emotional health of the child and there are no reasonable means to protect the child's safety or physical health without removal.

(2)    ☐ **ORDERS AUTHORIZING MEDICAL AND/OR SEXUAL ABUSE EXAMINATION PURSUANT TO WELF. & INST. CODE § 324.5 AND/OR PENAL CODE § 13823.11:**

Petitioner is authorized to obtain a medical exam for the child by a licensed medical practitioner who has specialized training in diagnosing and treating child abuse and neglect in order to determine whether the child has been abused or neglected. The exam shall be conducted within 72 hours of this order unless the child requires protective custody, in which case the exam shall be conducted within 72 hours of protective custody.

☐ Mother ☐ Father ☐ Legal Guardian is/are to be notified.
☐ Mother ☐ Father ☐ Legal Guardian is/are to be notified and invited to be present for the exam.
☐ Mother ☐ Father ☐ Legal Guardian is/are allowed to be on the premises but not in the exam room.
☐ Mother ☐ Father ☐ Legal Guardian is/are not to be on the premises or have any contact with the child during the exam.

(3)    ☒ **ORDERS AUTHORIZING ENTRY INTO CHILD'S LOCATION:**

Petitioner's agency and/or law enforcement are authorized to enter the child's location pursuant to Penal Code §§ 844 and/or 1531 in order to serve the authorization to remove the child, take the child into protective custody, and deliver the child to the appropriate Los Angeles County child welfare agency representative. The child is currently believed to be located at the following address(es): LAC+USC Medical Center  2051 Marengo St., Los Angeles, CA 90033 and/or 5434 Premiere Ave., Lakewood, California,

> ☐ **YES: NIGHT SERVICE (10 p.m. – 7 a.m.):** Good cause for night service of this authorization for removal having been established in the supporting affidavit, this authorization for removal may be executed at any hour of the day or night.

CHS.1022734 1                                        8 - RO 39855

exhibit f

(drug testing)



 Gmail            🔍  Search mail

## RE: Wrigley Joseph   Inbox ×

**Cristina Pinedo** <PinedC3@dcfs.lacounty.gov>
to me

Hello Kristen,

Attached is the updated drug test referral that indicates your prescribed medication.  Can you
the doctor that prescribed you this medication and sign a release of information with the agel



📄 kristenjosephdrugr..

**K**

No
c
Star

Yes, I will.      Thank you, will do.      No, I can't.

S7

## DCFS ALCOHOL - DRUG RANDOM TEST REFERRAL

**ATTENTION: Pacific Toxicology**   Please enroll client in the RANDOM SCHEDULE

[ ] ALCOHOL ONLY*        [X] DRUGS AND ALCOHOL*              [X] NEW        [ ] CHANGE

(*Must be consistent with current court orders)

### 1. CLIENT INFORMATION
Note: Information requested in section 1., 2., and 3. is **ABSOLUTLEY MANDATORY**

| Client/Donor Last Name | First Name | Donor's Birthdate | Donor's Social Security # (if available) | Test Code (Initial of donor's last name ONLY) |
|---|---|---|---|---|
| Joseph | Kristen | 07/25/1984 | | J |

| DCFS Case # (7 digits)*** Hotline referral # (19 digits) | Case Name | | Is Testing Court Ordered? | Referral Date |
|---|---|---|---|---|
| 0156-2400-1573-7053420 | Joseph, Wrigley | | Yes [X]   No [ ] | 03/02/2021 |

| Name of Oldest Minor in the case: | Service Component of the Case: |
|---|---|
| Joseph, Wrigley | ER |
| **Is donor taking medication?** | **Indicate the names of the medications** |
| Yes [ ]   No [X] | |

| IS THE DONOR A DIABETIC? (Diabetes might alter the alcohol test results)   YES [ ]  NO [X] |
|---|

### 2. COLLECTION SITE INFORMATION

| Name of Collection Site | Hours of Operation |
|---|---|
| Tarzana Treatment Center Long Beach | Mon. – Fri.: 8:00 AM - 7:00 PM |

| Street | City | Zip Code |
|---|---|---|
| 5190 Atlantic Ave | Long Beach | 90805 |

### 3. CSW, SCSW INFORMATION

| CSW Last Name | CSW First Name | CSW File No. | Phone Number |
|---|---|---|---|
| PINEDO | CRISTINA | GL73 | 562-497-3500 |

| SCSW Last Name | SCSW First Name | Phone Number | Fax Number |
|---|---|---|---|
| AYALA | AURORA | (562) 497-3487 | |

| DCFS Office Name and Address |
|---|
| South County: 4060 Watson Plaza Dr Lakewood, CA 90712 |

### 4. SPECIAL INSTRUCTIONS FOR DRUG TESTING

| Special Instructions/Specialized Schedule (e.g. 1x/month, 2x/week, Minor-parent) Additional Test dates (if applicable/known): DCFS is to provide random drug testing for mother | Supervisor's signature (if applicable) |
|---|---|

TERMINATION DATE (Note: This field is **mandatory** for all Referrals.  The termination date may not exceed six months from the date of Referral):
The timeframe for testing is from: **03/02/2021** to: **09/02/2021**

**INSTRUCTIONS TO CSW:**

Complete all information legibly.  This Referral is used to refer a client to **Pacific Toxicology** for alcohol and/or drug testing.

*** **Court Number will not be accepted.**  Writing in the Court number will not allow CSWs to receive test results.  The Hotline referral number is used only if the State Number is not available.

**INSTRUCTIONS TO CLIENT:**

Please call (800) 829-0100 daily (Sunday through Thursday) after 7:00 P.M. to hear if your Test Code has been called. You **MUST** test on the **SAME DAY** that your Test Code is scheduled.  A test taken on any other day will be considered invalid unless previously approved by your CSW.  **A missed test is considered to be a positive test.** If you are on a specialized drug-testing schedule, your CSW will give you instructions on when to test.

S8

# DCFS ALCOHOL - DRUG RANDOM TEST REFERRAL

**ATTENTION:** **Pacific Toxicology**   Please enroll client in the RANDOM SCHEDULE

[ ] ALCOHOL ONLY*        [X] DRUGS AND ALCOHOL*             [X] NEW             [ ] CHANGE

(*Must be consistent with current court orders)

## 1. CLIENT INFORMATION     Note: Information requested in section 1., 2., and 3. is **ABSOLUTLEY MANDATORY**

| Client/Donor Last Name | First Name | Donor's Birthdate | Donor's Social Security # (If available) | Test Code (Initial of donor's last name ONLY) |
|---|---|---|---|---|
| Joseph | Kristen | 07/25/1984 | | J |
| DCFS Case # (7 digits)*** Hotline referral # (19 digits) | Case Name | | Is Testing Court Ordered? | Referral Date |
| 0156-2400-1573-7053420 | Joseph, Wrigley L | | Yes [X]   No [ ] | 05/27/2021 |
| Name of Oldest Minor in the case: | | Service Component of the Case: | | |
| Joseph, Wrigley | | FR | | |
| Is donor taking medication? | | Indicate the names of the medications | | |
| Yes [ ]  No [X] | | | | |

IS THE DONOR A DIABETIC?  (Diabetes might alter the alcohol test results)     YES [ ]  NO [X]

## 2. COLLECTION SITE INFORMATION

| Name of Collection Site | Hours of Operation | |
|---|---|---|
| Tarzana Treatment Center Long Beach | Mon. – Fri.: 8:00 AM - 7:00 PM, LUNCH 2p-2:30p | |
| Street | City | Zip Code |
| 5190 Atlantic Ave | Long Beach | 90805 |

## 3. CSW, SCSW INFORMATION

| CSW Last Name | CSW First Name | CSW File No. | Phone Number |
|---|---|---|---|
| MEADOR | BRITTNEY | GL76 | 562-497-3638 |
| SCSW Last Name | SCSW First Name | Phone Number | Fax Number |
| | | | |

**DCFS Office Name and Address**

South County: 4060 Watson Plaza Dr Lakewood, CA 90712

## 4. SPECIAL INSTRUCTIONS FOR DRUG TESTING

| Special Instructions/Specialized Schedule (e.g. 1x/month, 2x/week, Minor-parent) Additional Test dates (if applicable/known): | Supervisor's signature (if applicable) |
|---|---|
| Client is to complete random drug test. | |

TERMINATION DATE (Note: This field is **mandatory** for all Referrals.  The termination date may not exceed six months from the date of Referral):

The timeframe for testing is from: **05/27/2021** to: **11/23/2021**

## INSTRUCTIONS TO CSW:

Complete all information legibly.  This Referral is used to refer a client to **Pacific Toxicology** for alcohol and/or drug testing.

*** **Court Number will not be accepted.**  Writing in the Court number will not allow CSWs to receive test results.  The Hotline referral number is used only if the State Number is not available.

## INSTRUCTIONS TO CLIENT:

Please call (800) 829-0100 daily (Sunday through Thursday) after 7:00 P.M. to hear if your Test Code has been called. You **MUST** test on the **SAME DAY** that your Test Code is scheduled.  A test taken on any other day will be considered invalid unless previously approved by your CSW.  **A missed test is considered to be a positive test**.  If you are on a specialized drug-testing schedule, your CSW will give you instructions on when to test.

## DCFS ALCOHOL - DRUG RANDOM TEST REFERRAL

**ATTENTION:** **Pacific Toxicology**   Please enroll client in the RANDOM SCHEDULE

[ ] ALCOHOL ONLY*      [X] DRUGS AND ALCOHOL*          [X] NEW          [ ] CHANGE

(*Must be consistent with current court orders)

**1. CLIENT INFORMATION**       Note: Information requested in section 1., 2., and 3. is ABSOLUTLEY MANDATORY

| Client/Donor Last Name | First Name | Donor's Birthdate | Donor's Social Security # (If available) | Test Code (Initial of donor's last name ONLY) |
|---|---|---|---|---|
| JOSEPH | KRISTEN | 07/25/1984 | | J |

| DCFS Case # (7 digits)*** Hotline referral # (19 digits) | Case Name | | Is Testing Court Ordered? | Referral Date |
|---|---|---|---|---|
| 0156-2400-1573-7053420 | Joseph, Wrigley | | Yes [X]  No [ ] | 03/02/2021 |

| Name of Oldest Minor in the case: | Service Component of the Case: |
|---|---|
| Joseph, Wrigley | FR |

| Is donor taking medication? | Indicate the names of the medications |
|---|---|
| Yes [X]  No [ ] | Adderall 35 mg (take one tablet by mouth every night at bedtime) Zoloft 100 mg (take 1 tablet by mouth once daily) |

**IS THE DONOR A DIABETIC?** (Diabetes might alter the alcohol test results)   YES [ ]  NO [X]

**2. COLLECTION SITE INFORMATION**

| Name of Collection Site | Hours of Operation | |
|---|---|---|
| Tarzana Treatment Center Long Beach | Mon. – Fri.: 8:00 AM - 7:00 PM | |
| **Street** | **City** | **Zip Code** |
| 5190 Atlantic Ave | Long Beach | 90805 |

**3. CSW, SCSW INFORMATION**

| CSW Last Name | CSW First Name | CSW File No. | Phone Number |
|---|---|---|---|
| PINEDO | CRISTINA | GL73 | 562-497-3500 |
| **SCSW Last Name** | **SCSW First Name** | **Phone Number** | **Fax Number** |
| AYALA | AURORA | (562) 497-3487 | |

| DCFS Office Name and Address |
|---|
| South County: 4060 Watson Plaza Dr Lakewood, CA 90712 |

**4. SPECIAL INSTRUCTIONS FOR DRUG TESTING**

| Special Instructions/Specialized Schedule (e.g. 1x/month, 2x/week, Minor-parent) Additional Test dates (if applicable/known): | Supervisor's signature (if applicable) |
|---|---|
| DCFS is to provide random drug testing for mother | |

TERMINATION DATE (Note: This field is **mandatory** for all Referrals.  The termination date may not exceed six months from the date of Referral):
The timeframe for testing is from: **03/02/2021** to: **09/02/2021**

**INSTRUCTIONS TO CSW:**

Complete all information legibly.  This Referral is used to refer a client to **Pacific Toxicology** for alcohol and/or drug testing.

**\*\*\* Court Number will not be accepted.**  Writing in the Court number will not allow CSWs to receive test results.  The Hotline referral number is used only if the State Number is not available.

**INSTRUCTIONS TO CLIENT:**

Please call (800) 829-0100 daily (Sunday through Thursday) after 7:00 P.M. to hear if your Test Code has been called.  You **MUST** test on the **SAME DAY** that your Test Code is scheduled.  A test taken on any other day will be considered invalid unless previously approved by your CSW.  **A missed test is considered to be a positive test.**  If you are on a specialized drug-testing schedule, your CSW will give you instructions on when to test.

exhibit x-1

( Sub Attorney)



Name    Kristen Joseph
Address  5434 Premiere ave Lakewood, CA 90712
Phone Number 562 314-8111

Party in Pro-Per Kristen Joseph


SUPERIOR COURT OF STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

Juvenile Dependency/Adoption Division


IN THE MATTER OF:

Wrigley Joseph

LOS ANGELES
Superior Court
Edelman Children's Court

## MOTION TO ALLOW SUBSTITUTION
## OF ATTORNEY IN THIS MATTER

THE COURT AND ALL PARTIES ARE NOTIFIED THAT: Kristen  Joseph, In

pro-per hereby moves this court for an order terminating the appointment of Veronica

Glaze, Esquire as counsel of record, and to substitute  Kristen Joseph, to speak for

herself pro-per in this matter in the place and stead of appointed counsel.

- -

42

I WAIVE MY RIGHT TO APPOINTED COUNSEL AND CONSENT TO THIS
SUBSTITUTION:

Date:   August 10, 2021


                              Name Kristen Joseph
                              Mother of Wrigley Joseph, In Pro-per

                              Address 5434 Premiere ave
                              Lakewood, CA 90712


I CONSENT TO THIS SUBSTITUTION:

Date:   _____


                              _____
                              _____, Esq
                              Former Attorney

                              Address

                              Telephone:


2

1

**Kristen Joseph,**
In Pro-Per/Pro Se

2
5434 Premiere Ave.
Lakewood, Ca 90712

3
Tel. (562) 314-8111
kristen@kdotphotography.net

4

5
**For Respondent**

6

7

### Superior Court of California

8

### County of Los Angeles

9

### Dependency Court

10

| | |
|---|---|
| DCFS of Los Angeles County, | ) **Case No.: 2CCJP00852A** |

11

12
DCFS of Los Angeles County,                    ) **Case No.: 2CCJP00852A**

          **Petitioner.**                    ) **Notice of Substitution of Attorney**

13
     **v.**                    ) **Authorities in Support of my Position**

Kristen Joseph.                    )

14
       **Respondent.**                    ) **Verification in Support**

15
                         ) **Reservation of Federal Rights**

16
                         ) **Notice on Administrative Hearings**

17
Wrigley L. Joseph                    )

18
      Minor in Interest.                    ) **Judge: Administratrix Hall**
                          ) **Dept./Room 423**

19

To the Court and all Parties of Interest

20

21
       There is an Ex Parte hearing with regard to the dependency case involving myself and

22
my son noted above. I am hereby filing to substitute myself in to represent myself going

forward. I do not accept the counsel that has been appointed to me and relieve them now.

23

24
       I spoke with the supervisor of the attorney appointed to represent me in this case at the

writing of this document. I have been informed that they will be appearing in Court on or about

25

26
July 30, 2021, for an Ex Parte hearing. I do not consent to them acting in my name or on my

behalf going forward. I am reticent that they may still do so, but this pleading becomes good

27
notice that they may not and it, including the attachments will fortify that.

28
       Now then, I am attaching two different documents representing my direct attempt to

1

Notice of Substitution of Attorney

| SUPERIOR COURT OF CALIFORNIA,<br>COUNTY OF LOS ANGELES | RESERVED FOR CLERK'S STAMP |
|---|---|
| IN RE: Wrigley, Joseph | |
| PARTY: Respondent | |
| Relationship To Child: Mother | |
| **ADVISEMENT AND WAIVER OF RIGHT TO COUNSEL**<br>**(Faretta Waiver) AS SUBSTANTIVELY AMENDED BY RESPONDENT** | CASE NUMBER      DEPT. 423<br>2CCJP00852A |

Fill out this form if you wish to proceed in propria persona (act as your own attorney). Initial the box for each applicable item only if you understand and agree with it, and sign and date the form where it says "PARTY'S SIGNATURE" on page 4. If you have any questions about anything on this form, ask the judge.

**CONSTITUTIONAL RIGHTS**                                                                 <u>**INITIALS**</u>

1.  I am a party in the above-entitled case, and I certify to the Court that I can read and write.  I          **KJ**
    Understand that my constitutional rights include the following:

    A.  **Right to An Attorney** – I understand that I have the right to be represented by an attorney at all      **KJ**
        stages of the proceedings and, if I do not have funds to employ an attorney, one will be appointed
        for me by the Court at no cost.

    B.  **Right to a Speedy Trial** – I understand that I have a right to a speedy trial.                          **KJ**

    C.  **Right to Subpoena Witnesses and Records** – I understand that I have the right to the reasonable        **KJ**
        use of the process of the Court to subpoena any witnesses or any records that I may need in my
        case.

    D.  **Right to Confront and Cross-Examine Witnesses** – I understand that I have the right to confront        **KJ**
        in open court all witnesses who will be called to testify against me, and I have the right to cross-
        examine those witnesses at the time of trial.

    E.  **Right Against Self-Incrimination** – I understand that I may have the right to testify at my trial, but
        that I cannot be compelled to testify at the trial unless I so desire.                                    **KJ**

    F.  **Right to Self-Representation** – I understand that I have a right to self-representation and may
        waive my right to counsel.  I further understand that if I am permitted to represent myself, I will have
        to conduct my own defense WITHOUT ASSISTANCE OF A LAWYER.                                                 **KJ**

    G.  AND OTHER SUBSTANTIVE CONSTITUTIONAL RIGHT THAT EXIST THAT ARE NOT LISTED
        THAT SUPPORT THE UNSIGNED'S RIGHT.                                                                        **KJ**

**BACKGROUND**

2.  In support of my petition to proceed in propria persona (also referred to as "pro per"), I offer the Court the
    Following biographical information:

    A.  Age: [I am over 18]      Year of Birth: [I am over 18]
    B.  Education:
        **(1)  I am competent and can read and write.**

        (2)  Additional Formal Education (if any):
             **My education is enough to tell me I am being railroaded.**



(3) Legal Education (if any): None, but this doesn't matter. I have read many cases and statutes.

**C.** Employment Experience: **I work and am gainfully employed. This isn't relevant.**

D.  I have previously been granted the right to proceed in propria persona in the following criminal and/or juvenile court matters: **This isn't relevant.**

## DANGERS AND DISADVANTAGES TO SELF-REPRESENTATION                    INITIALS

3.  I understand that there are many dangers and disadvantages in representing myself.  Among those disadvantages of not having an attorney are the following:

A. I understand that if I am permitted to represent myself it will be necessary for me, WITHOUT THE ASSISTANCE OF A LAWYER OR THE COURT, to follow all the technical rules of substantive law, juvenile court and civil procedure, and evidence. **The Court has a duty to follow US Supreme Court Precedents and not railroad me. See for Instance Troxile v. Granville, 530 US 57 (2000), Santosky v. Kramer, 455 US 745 (1982), and others that advance my rights. I will not sign any document that purportedly sanctions a judge to ignore these even under the supposed label is a so called "disadvantage" as you may not ignore these.**                    KJ

B.  I understand the case against me will be handled by a County Counsel who is an experienced trial attorney, and that I will not be entitled to special consideration or assistance by the Court during the course of the trial. **The attorney for the County actively working to take my child have and still retains the duty of candor to the court and to me. They have a duty to protect and follow the US and California Constitutions and the duty to follow the rules and the regulations of court and the duties and decisions of the US Supreme Court and I will not sign a waiver that states otherwise without amendment as I proceed.**                    KJ

C.  I understand that if I am permitted to represent myself, it will be necessary for me WITHOUT THE ASSISTANCE OF A LAWYER, to conduct my own trial consisting of, but not limited to: making Pretrial motions; cross-examining the witnesses for the Department of Children and Family Services; subpoenaing and presenting my own witnesses; making appropriate objections and motions during the course of the trial; presenting and laying the foundation for proposed exhibits to the Court; making the final argument; making appropriate motions after trial; representing myself at the time of the disposition hearing in the event the petition is sustained. **I agree to this in substance and alert the Court that my initial appointed trial attorney did not do this competently.**                    KJ

**D.** I understand that I cannot and will not receive any help or special treatment from the Court. **This is Not proper. The court may need to apply the law. The US Supreme Court asserts the duties of the Court to adhere to the Constitution and to stop wrongful actions. I do not consent to this being signed off on without making it clear that the judge has duties. So, I am not seeking "special treatment" but the court has a duty not to railroad me or allow that to happen or allow the opposing or any party to act outside the scope of due process, proper procedure or against my substantive rights as defined or decided in Precedents relevant to this topic.**                    KJ

E.  [I understand that because of my custodial status, it will be difficult for me to contact witnesses and investigate my case.  I understand that I will have limited access to a telephone, which will make preparations for trial more difficult, and that I will be provided no more access to the law library than any other pro per inmate.]. **This is more for criminal cases. I understand I do have a right to contact witnesses and investigate my case and to have reasonable access to my child for evidence.**                    KJ

F.  I understand that no continuance will be allowed without a showing of good cause, and that such requests made just before trial will most likely be denied. **This is unlawful. Any requests for continuances are to be decided on a case-by-case basis.**

F.  I understand that depending on the stage of my case, if I ask to give up my pro per status and request

2



counsel to handle my case, the Court may deny this request and I may have to proceed with trial
without an attorney.                                                                          **KJ**

G.   I understand that in conducting the trial, I will be limited in my movements in the courtroom.  All
documents, for example, will be handed to witnesses when necessary, through the bailiff, I will be
required to remain in my seat at counsel table and will not have free access in the courtroom. I only
agree to what is reasonable and lawful. **I do not agree to this clause limiting to anything than what
would be standard decorum.**                                                                 **KJ**

H.   I understand that I must not abuse the dignity of the Court.  I understand that the Judge may
terminate my right to self-representation in the event that I engage in serious misconduct or obstruct
the conduct and progress of the trial.  I understand that if my pro per status is terminated, I may have
to be represented by a lawyer, appointed by the Judge, who will then take over the case at whatever
stage the case may be in. I take notice of this. **I will not initial. I also will not agree to the court creating
a reason for this to happen if I begin winning.**

I.   I understand that if at some point an appointed attorney does take over my case, that attorney may be
in a disadvantaged position and that such a disadvantage will not be considered an issue on appeal. **But
then, I might have an advantage because the last ones haven't done anything and I think by design.**   **KJ**

J.   I understand that misconduct occurring outside of court may result in restriction or termination of
my pro per privileges.  [I also understand that my pro per status will not shield me from disciplinary
actions within the jail, and that I will be subject to the same disciplinary measures as all other inmates
for misconduct occurring in the jail.]. **The Court is competent to act on its own to act on these rules. I am
aware of the duty of a judge to marshal and maintain the decorum of the court room. However, a judge
may not create a false circumstance to punish me where no crime exists.**                     **KJ**

K.   I understand in the event of the sustaining of a petition and an appeal, by acting as my own lawyer, I give
up and waive my constitutional right to effective assistance of counsel as a possible ground of appeal.  However,
if I am represented by an attorney, I may complain on appeal that the attorney did not effectively represent me. **I am
alerting the Court that my past attorneys did not act competently.**                          **KJ**

## COURT'S ADVICE AND RECOMMENDATION

I understand that it is the advice and recommendation of this Court that I do not represent myself and that
I accept court-appointed counsel.  I understand that if I accept court-appointed counsel, an experienced
trial lawyer will be assigned to try my case.  I understand that the lawyer would be able to investigate my
case, file pre-trial motions, and advise me on what to do. **Do not agree.**

I understand that this written petition to proceed in propria persona will be filed and become part of the Court case file.
I further understand that on any appeal that may be taken, or upon the filing of a petition for an Extraordinary Writ,
this petition will be forwarded to any court of appeal and will be considered by that court in determining whether I
knowingly and intelligently waived my right to legal counsel. **Do not agree.**

I understand all that I have read and all that the Court has told me.  It is my personal desire that I be granted
permission by the Court to proceed in propria persona.  I understand that by making this request
I am giving up the right to be represented by a lawyer. **Do not agree.**

I hereby certify that I have read, understood and considered all of the above warnings included in this petition, and I
still want to represent myself.  I freely and voluntarily give up my right to have a lawyer represent me.

Signed: _____          Dated: JULY 3, 2021

I WAIVE MY RIGHT TO APPOINTED COUNSEL AND CONSENT TO THIS
SUBSTITUTION:

Date:   Jul 26, 2021

Name Kristen Joseph
Mother of Wrigley Joseph, In Pro-per

Address 5434 Premiere ave
Lakewood, CA 90712


I CONSENT TO THIS SUBSTITUTION:

Date:   _____

_____
_____, Esq
Former Attorney

Address

Telephone:

2



**Notice of Administrative Hearing**

Judge Hall, it should be important to note that this substitution of counsel is an administrative hearing and not a judicial one. There is no room for opposing pleadings in opposition, thus it is administrative. Immunity does not attach in these circumstances:

"Judges have long enjoyed absolute immunity from liability in damages for their judicial or adjudicatory acts, primarily in order to protect judicial independence by insulating judges from vexatious actions by disgruntled litigants. Truly judicial acts, however, must be distinguished from the administrative, legislative, or executive functions that judges may occasionally be assigned by law to perform. It is the nature of the function performed -- adjudication -- rather than the identity of the actor who performed it -- a judge -- that determines whether absolute immunity attaches to the act." Forrester v. White, 484 US 219 (1988).

**CONCLUSION**

I ask that the substitution of attorney be recognized immediately and until or unless I decide otherwise.

Respectfully submitted,

By:

**Kristen Joseph** *Pro Se*
kristen@kdotphotography.net
5434 Premiere Ave.
Lakewood, Ca 90712
Tel. (562) 314-8111

**VERIFICATION**

IT IS HEREBY certified that the facts in the foregoing pleading are true and correct under penalty of perjury to the best of my knowledge and belief. Attachments to this pleading are true and correct copies of the items they purport to be.

4
Notice of Substitution of Attorney

Dated this 29th Day of July 2021

By:

**Kristen Joseph,** *Pro Se*
kristen@kdotphotography.net
5434 Premiere Ave.
Lakewood, Ca 90712
Tel. (562) 314-8111

**Table of Exhibits and Attachments**

| Exhibit | Attachment |
| --- | --- |
| A | Substitution of Attorney Form 1 |
| B | Faretta Waiver |

Name   Kristen Joseph
Address  5434 Premiere ave Lakewood, CA 90712
Phone Number 562 314-8111

Party in Pro-Per Kristen Joseph

### SUPERIOR COURT OF STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

Juvenile Dependency/Adoption Division

IN THE MATTER OF:

Wrigley Joseph

|   |   |
|---|---|
| ) | |
| ) | |
| ) | |
| ) | LOS ANGELES |
| ) | Superior Court |
| ) | No. _____ |
| ) | |

### MOTION TO ALLOW SUBSTITUTION
### OF ATTORNEY IN THIS MATTER

THE COURT AND ALL PARTIES ARE NOTIFIED THAT: Kristen  Joseph, In

pro-per hereby moves this court for an order terminating the appointment of Danielle

Stehura, Esquire, as counsel of record, and to substitute  Kristen Joseph, to speak for

herself pro-per in this matter in the place and stead of appointed counsel.

- -

1   and is borne by me and not the person appointed to represent me: *"The right to defend is*
2   *personal. The defendant, and not his lawyer or the State, will bear the personal consequences*
3   *of a conviction. It is the defendant, therefore, who must be free personally to decide whether, in*
4   *his particular case, counsel is to his advantage. And **although he may conduct his own***
5   ***defense ultimately to his own detriment, his choice must be honored out of 'that respect for***
6   ***the individual which is the lifeblood of the law.***"" *Illinois v. Allen, 397 US 337, 350-351*

7          I have a right to choose whether to represent myself or have an attorney: ". . . *When the*
8   *administration of [the] law . . . is hedged about, as it is, by the Constitutional safeguards for*
9   *the protection of an accused, to deny him in the exercise of his free choice the right to dispense*
10  *with some of these safeguards . . . is to imprison a man in his privileges, and call it the*
11  *Constitution." Adams v. United States ex rel. McCann, 317 US 269, 279-280*

12         I have a right not to have an attorney forced upon me: " . . . *the question is whether a*
13  *State may constitutionally hale a person into its criminal courts and there force a lawyer upon*
14  *him, even when he insists that he wants to conduct his own defense. It is not an easy question,*
15  *but we have concluded that a State may not constitutionally do so." Faretta v. California, 422*
16  U.S. 806 (1975).

17         These same rights apply to a family law court and I assert them upon my own behalf.

18
19                         **Reservation of Federal Issues for a Federal Forum**
20         I hereby declare on this state court record and hereby reserve that it is my intent to not
21  consent to this forum to make final decisions or try or decide issues of a federal question or
22  statute or United States Constitutional rights or violations thereof. I reserve the right to do so in
23  a federal forum at my discretion. I cite England v. Medical Examiners, 375 U.S. 411 (1964);
24  Government Employees v. Windsor, 353 U.S. 364 (1957) ; and Jennings v. Caddo, 531 F.2d
25  1331 (5th Cir. 1976).
26
27
28

1   formally substitute myself in to represent me in my case. There was some issue on which form

2   was correct or more correct, so I am filling out and filing both and then adding this so there is

3   no confusion. I am also adding a signed Faretta Waiver and I further add this verification in

4   support. I believe the issue is complete.

5       I believe that due to the nature of things that go on in our courts, there is still a chance

6   that somehow either on their own initiative or even at the direction of the Court, the attorneys

7   who have been appointed to represent me to this point may still act or attempt to act in my

8   stead without my consent. If they do, they will force my hand as I realize that I would have to

9   file a malpractice suit. Further, I would file in Federal Court and even though, "A public

10  defender does not act "under color of state law" when performing a lawyer's traditional

11  functions as counsel to an indigent defendant . . . " Polk County v. Dodson, 454 U.S. 312

12  (1981) however, since all participants in this case will be fully aware that the substitution has

13  been filed, any action by the formerly appointed counsel will now be deemed as collusion and

14  as such is cognizable under 42 USC 1983 and case can be maintained in Federal Court because

15  even though they are supposedly treated as a law firm, their position changes when they were

16  colluding with the judge as follows: "Held . . . 2. State public defenders are not immune from

17  liability under § 1983 for intentional misconduct by virtue of alleged conspiratorial action with

18  state officials that deprives their clients of federal rights. For purposes of § 1983, immunities

19  are predicated upon a considered inquiry into the immunity historically accorded the relevant

20  official at common law and the interests behind it." Tower v. Glover, 467 U.S. 914 (1984)

21      Historically, it is the right of an individual to represent themselves in Court: "In the

22  federal courts, the right of self-representation has been protected by statute since the

23  beginnings of our Nation. Section 35 of the Judiciary Act of 1789, 1 Stat. 73, 92, enacted by

24  the First Congress and signed by President Washington one day before the Sixth Amendment

25  was proposed, provided that, 'in all the courts of the United States, the parties may plead and

26  manage their own causes personally or by the assistance of . . . counsel . . .'" Faretta v.

27  California, 422 U. S. 806, 812-813 (1975)

28      The right to be able to defend oneself in a case is paramount as the outcome is personal

2
Notice of Substitution of Attorney   73

exhibit X-2

(motion for continuance)



1   **Kristen Joseph,**
  In Pro-Per/Pro Se
2   5434 Premiere Ave.
  Lakewood, Ca 90712
3   Tel. (562) 314-8111
  kristen@kdotphotography.net
4

5   **For Respondent**

6

7              **Superior Court of California**

8               **County of Los Angeles**

9               **Dependency Court**

10   **DCFS of Los Angeles County,**    )  **Case No.: 2CCJP00852A**
                            )
11            **Petitioner.**      )
                            )  **MOTION FOR CONTINUANCE**
12         **v.**           )
                            )  **FACTS IN SUPPORT OF MY**
13   **Kristen Joseph.**         )  **POSITION**
                            )
14            **Respondent.**     )  **AUTHORITIES IN SUPPORT**
                            )
15   ———————————————————— )
                            )
16   **Wrigley L. Joseph**        )
                            )  **Judge: Hon. Tamara Hall**
17         **Minor in Interest.**   )  **Dept./Room 423**
                            )
18   ———————————————————— )

19   To the above named Court and all Parties of Interest:

20   I Kristen Joseph, am the Respondent in the above-entitled action. I am employed as a

21   Wedding Photographer and typically work from Friday to Sunday. I am contractually

22   obligated for a wedding on Friday July 30, 2021. The Department has filed an Ex Parte

23   without notice or opportunity to be heard and that I cannot defend due to my prior binding

24   commitments.  This is not the first time the Department has scheduled Ex-Parte hearings

25   involving my substantive rights on days they know I am scheduled to work. This appears to

26   be a custom and pattern of practice in my case and I believe that the facts are such that this Ex

27   Parte should not go on and the matter be continued.

28         Now then, for the people who have hired me to photograph their weddings, the

1   circumstance and intent of me doing so is that Wedding are "one-time events" in which the

2   couple plans to share with each other and their families who don't get together often in their

3   lives and my job is to take pictures of these for pinnacle life time memories, I cannot not go.

4   There is no way for me to push a wedding off due to my circumstance. In fact, the reader of

5   this document as well as the public at large are often fully aware that weddings are sometimes

6   planned years in advance for a single day event. I will be damaging the clients by not

7   showing up. I would be in the position for which I would owe them what they paid me and

8   perhaps they would bring a suit for more damages and I would lose my job. So, I have to stick

9   with these arrangements. Also, I am told that DCFS and CPS or other similar coded agencies

10  for county agents will state that me meeting my contractual work obligation is "not in the best

11  interest of the children" or other similar VERY creepy statements. If I am not able to provide

12  for myself economically, then I am not able to take care of my child and THAT would not be

13  in my child's best interest. I have to do this and will honor this obligation.

14                          **A CONTINUANCE**

15      The EX PARTE appears to me to have been super fast tracked. I have been caught off

16  guard. Also, I have decided, for good or for ill, to represent myself. As a person with no legal

17  background, I believe I have a right to get a reasonable continuance to prepare my defense in

18  this case and thus I ask for such. I believe the standard is good cause and that exists. The fact

19  that I am asking to represent myself is not a factor to be weighed against me by this court at

20  this time though the court itself might desire to do so. Such would amount to a violation of

21  my right to due process under Article I Sec. 7(a) of the California Constitution: "A person

22  may not be deprived of life, liberty, or property without due process of law or denied equal

23  protection of the laws;" so, please grant me this.

24      Also, there are no exigent circumstances to grant the Department and Order

25  Shortening time to serve, or to grant an Ex Parte application without Notice or opportunity to

26  be heard. The State has possession of my child, I do not. I believe that this matter was not

27  properly prosecuted by the state, my previous court-appointed attorneys have not properly

28  defended me and this motion that I now face will have errors and mischaracterizations of fact

1  and I believe that my substantive rights have been wrongfully, and all of this is not proper.

2  Furthermore, the structural fact that I do not have possession of my child means that any

3  concerns that the state might have with me or my supposed past actions means that I am not

4  able to take any of their mal theories of my actions or proclivities out on my child or them

5  and that a hearing at some convenient time in the future for all parties to properly prepare can

6  be set and thus should be set accordingly.

7       I believe the standard for a continuance is **good cause** and I believe that exists. Again,

8  there is no driving need to have this hearing this quickly. I ask for a reasonable continuance

9  of two months time. I ask that that Opposing counsel meet and confer on a call for the

10  specific date so that it does not land on a Wedding day!

11              Respectfully submitted,

12

13  By: _____

14  **Kristen Joseph,** *Pro Se*
    kristen@kdotphotography.net

15      5434 Premiere Ave.
    Lakewood, Ca 90712
    Tel. (562) 314-8111

16

17            **VERIFICATION**

18       IT IS HEREBY certified that the facts in the foregoing are true and correct under penalty

19  of perjury to the best of my knowledge and belief. Attachments to this are true and correct copies

20  of the items they purport to be.

21       Dated this 29th Day of July 2021.

22          By: _____

23      **Kristen Joseph,** *Pro Se*

24      kristen@kdotphotography.net
    5434 Premiere Ave.

25      Lakewood, Ca 90712
    Tel. (562) 314-8111

26

27

28

exhibit X-3
( objection
Report)



Wrigley
21CCJP00852A

Kristen Joseph
5434 Premiere ave.
Lakewood, CA 90712
562.314.8111

### SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
#### Juvenile Dependency/Adoption Division
IN THE MATTER OF:

Wrigley Joseph
(DOB 3-1-2012)

OBJECTIONS AND CORRECTIONS
TO THE REPORT OF THE
CHILD WELFARE CASEWORKER(S)
SCSW AURORA AYALA
CSW CRISTINA PINEDO
CSW BRITNEY MEADOR
CSW LINDA BOSSENMEYER

The Honorable Los Angeles Superior court is hereby advised that the REPORT OF THE CHILD WELFARE CASEWORKER(s) herein, as prepared and typed is ERRONEOUS AND INCORRECT in the following particulars, to wit:

In regards to an ex-parte application and report filed on July 27, 2021 and signed under penalty of perjury by social worker Cristina Pinedo and Aurora Ayala but not limited to this report alone. Response includes facts that support the objection to a change in visitation. Social workers have an affirmative duty to disclose information in reports to the court providing such information therein as accurate, honest and complete. Department is to remain neutral, professional, factual in all reports and intentionally omitting information shall render statements false. Exculpatory information has been continuously and intentionally left out of most reports alleging a non-existent risk level and this is brought before the court today to display how even trivial errors display the workers and Department's negligence and incompetence.

**Discussion/Declaration of Facts**

July 27, 2021- ex parte filed by CSW Cristina Pinedo and SCSW Aurora Ayala in regards to visitation. The request asks the court to move Mother and child's visitation to a therapeutic setting alleging child's emotional well-being becomes a concern when around Mother.

It is important to note, this statement comes nearly six months post removal of the child from Mother and following nearly 6 months of being cut off nearly entirely from Mother and home. This is due in part to The Department of Children and Family Services (DCFS) negligence in the case of Wrigley Joseph. The emotional, mental, and physical

79

abuse endured by said child has been created and brought upon by DCFS itself. This has ensured unnecessary trauma, instability, and severe abuse to said child in this matter in which DCFS alleges to avoid at all costs.

Statements within said ex-parte suggest visitation was granted on 5-10-2021, However visitation (3x3) was granted on February 26, 2021 and this is clear intentional deceit to the court. The first and initial visitation schedule was provided to Ms. Joseph on May 9, 2021, this falls 73 days after child's wrongful warrantless removal. **(Exhibit B)**

**(Exhibit A)** Per law, Child is to have visitation facilitated by DCFS with parent within 72 hours of removal, child participated in first visitation with Mother, Kristen Joseph, 151 days post removal from his home. This is a detriment to both Mother and Child's emotional and mental health and well-being. Furthermore, children MUST have the opportunity to visit with parents prior to the detention hearing yet this was not granted nor was it initiated in any regard. Visitation is the utmost critical component of reunification of any family, is mandated by law, and in this case had clear court orders to abide by that were ignored and violated. It is the CSW assigned to the case's responsibility to ensure visitation is not only consistent with all court orders but consistent with the law as well.

**(Exhibit A) Family Visitation-DCFS Policy-Procedure guide**
Pg. 2 "Visitation between children, their parents and other family members are essential for achieving the outcomes of safety, permanence and well-being Pg. 3. "Family visits should occur as frequently as appropriate" Pg. 3. "Frequent telephone contact should be encouraged" Pg. 3. "The need for flexibility in end times shall be addressed" Pg. 3. "Alternate forms of visits and communication approved are telephone calls, letters, email, phone texting, social networks" Pg. 4 "Supervised visits shall include the REASON supervised visits are required" Pg. 6. " Children must have the opportunity to visit with parents
Pg. 7 "When placing a child csw must consider the proximity of the caregiver to the child's home address for the purpose of implementing FVP" Pg 8. " CSW must ensure that visitation is consistent with all court orders" Pg 9 "Csw to document when there is not visitation plan and why"

1. On March 25, 2021, following multiple discrepancies in reporting, inconsistencies within the information being provided to myself by CSW Cristina Pinedo, Ms. Joseph stated she is uncomfortable moving forward without monitors, attorneys, or recordings to CSW. I clarified this would be for all party's protection and transparency. **(EXHIBIT C)**

CSW Pinedo disapproved of Ms. Josephs' desire to protect all parties and also disapproved of communicating in a manner in which everything would be documented. March 18, 2021 CSW Pinedo emailed Ms. Joseph stating again she does not agree to being recorded which began to be a very large topic of every conversation despite Ms. Joseph's desire to feel protected and transparent.

2. March 18, 2021 CSW stated she would like to meet in person or over the telephone, where recording could not take place to discuss the court ordered visitation which displays CSW Cristina had a clear understanding these visits were mandated by a court order. **EXHIBIT C**

3. March 24, 2021 Ms. Joseph emailed Cristina explaining why she is uncomfortable without a monitor, attorney, or recording. She stated how she felt deceived and how her son is not being protected. **(c)** Ms. Joseph also included in this email that since visitation had not been initiated, she was requesting visitation virtually as soon as possible. Ms. Joseph also stated due to CSW placing her child with an estranged family member where communication between Mother and caregiver was near impossible, she would need the intervention and assistance of CSW to ensure she was able to communicate with her son. At this point in March of 2021, Ms. Joseph had not only not been granted the opportunity to visit with her child, she was also being denied phone calls and virtual visitation. **(a,c)**

4. On March 26, 2021, Ms. Joseph requested CSW Cristina provide the information to her supervisor. CSW Cristina had an answering system that stated her supervisor's information however this supervisor was no longer within the department and not CSW Cristina's supervisor. Of course, this could be a simple mistake and hadn't been updated, or it could be clear deception and diversion as it took multiple months before I successfully connected to a supervisor within The Department.

5. March 26, 2021 was the last time Ms. Joseph connected with CSW Cristina until she called Ms. Joseph on July 9, 2021. From March 26, 2021 until April 22, 2021 when CSW Britney made her first call to Ms. Joseph, Ms. Joseph did not have a social worker on her case, if one had been assigned, I was unaware, I had yet been contacted and or connected with an alternate CSW prior to April 22, 2021. That's nearly 1 month without a working social worker which is extremely negligent, unprofessional, and weighed gratefully on our family and any reunification. **(c)**

~ICC JP 0082A

In this time, Ms. Joseph reached out to counsel multiple times in regards to visitation however Friday March 12, 2021, Ms. Joseph's court appointed attorney advised her she would be moving rooms and Ms. Joseph would have a new attorney despite developing a bond and relationship with said attorney. (This was my 2nd attorney by that time) I continued to reach out to Ms. Dalida V. (attorney) until March 16, 2021. I, Ms. Joseph did not have any information regarding new counsel and was faced with legal issues and discrepancies such as my son's placement without legal assistance. From March 12, 2021 until March 29, 2021, I had not a single attorney contact me that would be representing me nor did I have any success with supervisors at the Jolene Metzgar law firm during this time. Dylan Colbert introduced himself via text message on March 29, 2021 yet we did not connect personally until April 12, 2021. In this time period, I submitted multiple bar complaints, complaints with the court, and spoke to multiple supervisors within the firm attempting to rectify this situation and receive the assistance our family is constitutionally guaranteed. Jolene Metzgar finally returned my call and advised me she never removes attorneys from a case and I needed to "trust" Dylan who I had yet to speak to.

6. Between much of March and April, Ms. Joseph was left without a CSW as well as without counsel. Upon finally speaking with Mr. Colbert, Ms. Joseph's number one concern was visiting with her child. My concern has always been effectively connected to and with my son, being involved in his life, education and medical treatment.

The forced separation of parent from child, even for a short time, represents a serious infringement upon the rights of both. J.B. v. Washington county, 10th Cir. (1997) Parent's interest is of "the highest order." And the court recognizes "the vital importance of curbing overzealous suspicion and intervention on the part of healthcare professionals and government officials." Thomason v. Scan Volunteer Services, Inc., 8th Cir. (1996)

After many calls, messages and attempts to connect with a supervisor, I finally received a phone call from SCSW Aurora Ayala on May 6, 2021. (I would like to note Aurora did call April 23, 2021 however Ms. Joseph was waiting for her hearing and answered to notify Aurora of this to ensure they connected) They did not connect again until May 6, 2021. Ms. Ayala was kind and understanding of Ms. Joseph's frustration. She was patient and thorough and addressed many of Ms. Joseph's concerns. Ms. Ayala stated a CFT meeting should have been conducted and apologized sincerely. Since it had not, she would set this meeting up to address all concerns. (c)

7. May 5, Ms. Joseph was contacted by ARA Tina Luke following a complaint Ms. Joseph made to Senator Lena Gonzales. Following their conversation, Ms. Joseph emailed Ms. Luke a detailed list of calls, interactions, and discrepancies within the case and department. Ms. Luke emailed back stating

she would be addressing visitation and scheduling the CFT meeting or having
Ms. Ayala schedule it. In response to one of my concerns (education
decisions) I had been cut off from all of my son's education yet had shared
rights. Ms. Luke wrote back (d) that I was incorrect and my educational rights
were "limited". This is an unsound statement as my educational rights were
"shared" and not limited. Since this false statement was provided to
caregivers, I was cut off from participating in anything regarding my child's
education, however a false statement. ( C )

8.  May 19, 2021 a virtual CFT meeting occurred in which SCSW Aurora Ayala,
CSW Britney Meador, Mother, Kristen Joseph and Monitor, Karrie Elizabeth
Harlow were present. **(Exhibit D)** This meeting was an over 3-hour virtual
meeting where many issues were brought to the attention of the Supervising
social worker. These issues include but are not limited to visitation, virtual
visitation, phone calls and communication, communication with caregivers,
child's location in proximity to mother, disappearing social workers, child's
belongings, youth bill of rights including the right to child's tablet that had
been confiscated (and yet to be returned to Mother nor Child)

    During this meeting Ms. Joseph stated many aversions to CSW Pinedo
and asked if she could be permanently removed from the case. I cited specifics
and evidence backing my concerns with CSW Pinedo. Ayala stated she'd
address this.

    Ms. Ayala stated many times she can observe Ms. Joseph is a GOOD
and caring mother and is apologetic this situation has occurred. Ms. Ayala stated
she is hearing and observing Ms. Joseph is extremely involved in her child's life,
education and health. She stated she observes Ms. Joseph's not only willingness
to participate in certain therapies and classes but her desire. Ms. Joseph had
written a letter to read during the CFT as this helped ensure she would not forget
nor get off subject. In this letter were certain requests that Ms. Ayala stated shall
be addressed. I, Ms. Joseph asked specific questions such as,

    a.  Why are my visits monitored? I stated I believed it would be
       much easier if calls and visits weren't monitored to even get a
       visit in which I was told would be explored as an option

    b.  I addressed concern for my child's belongings and tablet and
       asked for information as to why the tablet was confiscated
       despite being the child's right

    c.  How would they ensure phone call visits?

    d.  How would they begin virtual visitations and what application
       said visits would occur?

e.  I addressed concerns regarding my son's placement and location and ensured she understood he was placed nearly 150 mi from home and asked to please ensure he was relocated back to his hometown.

Ms. Ayala stated she would ensure the child obtains his belongings and tablet and be sure to address all other topics. These promises were empty as none of these promises actually occurred aside from one visit on July 20, 2021, 62 days post virtual CFT Meeting.

"the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child."[4]

9.  CSW Britney Meador was now the responsible CSW assigned to our case. She was responsible for ensuring visitation and SCSW Aurora Ayala was responsible for ensuring the social worker is following policy and procedures. May 7, 2021 CSW Britney called Ms. Joseph at a time Ms. Joseph had previously indicated to the CSW she would be working. This call was regarding visitation. Ms. Joseph had been BEGGING CSW Britney to ensure visitation was occurring because she would LOVE to spend Mother's Day with her son. The call on May 7, Ms Joseph became extremely excited yet could not answer due to her working circumstances so she immediately responded via email. CSW Britney stated in her response that she was calling to speak about visitation and would reach out on Monday (After Mother's Day) to speak. She stated in order to move forward she needed a signed visitor guideline form. This is not only inaccurate but Ms. Joseph signed a copy back in February.

10. On May 10, 2021 Ms. Joseph notified  esq. Mr. Colbert she would like to file contempt of law due the fact she has not seen her son physically since February 19, 2021, had not had a virtual visit since March 1, 2021 (child's 9th birthday) and was being denied calls repeatedly since his placement with the estranged family member. Mr. Colbert advised Ms. Joseph a visitation schedule was provided the previous day, May 9, 2021 and due to this contempt would not be something we could legally proceed on.

11. Visitation schedule was what appeared as intentionally interfering with work, anger management classes, was nearly 75 miles away when gas was at 4.50 a gallon during the busiest hours for traffic of the day on the highways that lead to the location. Ms. Joseph immediately reminded CSW how

84

6

unreasonable this schedule was for all parties and reminded the Dept. Prior to placement I had made them aware of vehicle difficulties.

Ms. Britney Meador advised Ms. Joseph to send her a list of times and locations she believed were reasonable and Ms. Joseph did just that. May 11, 2021 Ms. Joseph sent an email asking when they would have visitations and at what reasonable location. May 21, Ms. Joseph emailed CSW Britney once again allowing her to know caregivers were denying phone calls or placing child in uncomfortable and compromising situations which made it uncomfortable to talk to mother and asked if and how they would hold caregivers accountable.

12. May 25, 2021 Ms. Joseph sent another email with specific locations to CSW Britney Meador that looked appropriate and reasonable for all parties. May 26 was the last interaction Ms. Joseph had with CSW Britney. Ms. Joseph reached out on May 26, May 27, June 10, July 7th, July 8th via email and May 25, and June 10 via phone call to no avail.

13. June 15, 2021 I was advised by Mr. Colbert that on June 16, 2021 there would be a hearing for a Marsden Motion I had been asking to have filed for weeks, as well as an ex parte request to travel with my son by a party not involved in the case at this point absent of exigent circumstances. (Paternal grandparents)

14. The travel request was continued to June 18, 2021 and Marsden was granted. Prior to Marsden I submitted an objection to the travel request, submitted to Mr. Dylan Colbert who in turn did not file with the court. The continued hearing date was on a known date of work for myself.  June 18, 2021, while an attorney had yet contacted I, Ms. Joseph, Ms. Joseph began calling the court clerk at 830am. After several attempts Ms. Joseph was connected to the courtroom clerk in room 423 (David Caspole) I provided information regarding my situation and inquired as to how I may provide my objection to the court in the event I had left for work by the time my case was called. Mr. Caspole stated he would simply have the matter moved to the following Monday. Relieved Ms. Joseph proceeded to work until she was contacted by a Senior Attorney stating she was representing Ms. Joseph at the hearing that day.

I, unaware the matter would be heard, was speaking to this woman for the first time less than 10 minutes prior to the hearing. Soon after, I received a text message from Sr. Attorney Katherine that the motion had been granted, Judge Tamara Hall stated

she believed I had "intentionally made herself unavailable". Exhibit #7 Judge Hall granted this motion despite the fact I had yet to have had a single visitation with my son knowing this would without a doubt further alienate me from my son. **(Exhibit E)**

The travel dates were nearly 3 weeks of travel. Judge Hall however did state all back visitation shall be made up physically and virtually, Ms. Joseph shall also be provided virtual and phone call visitation during the travel. This did not happen. Nearly every day from June 18, until July 5, Ms. Joseph called the number provided by the department for her son and never was connected. In fact, The last phone visitation where Ms. Joseph and Wrigley Joseph spoke was June 10th. From June 10th until July 16, 2021 Ms. Joseph was unable to connect with her child and when she did connect on July 16, 2021, Paternal Grandmother ended the call stating "inappropriateness" which has been a theme amongst reporting parties. **(Exhibit G)**

15. July 5, 2021 through a mutual friend of Ms. Joseph's and Paternal Grandparents of Wrigley Joseph, Ms. Joseph was made aware her child was not in Boise, Idaho as she thought however had been in Long Beach, 5 minutes away from her own home the entire time she believed him to be in another state. Rightfully upset from this new information, and partly in due to not yet connecting with new court appointed attorney Danielle Stehura, Ms. Joseph called LADC leaving messages for the supervisor. July 6, 2021 Ms. Joseph then filed another complaint with the court against counsel as she was still not receiving effective and competent counsel.

16. July 8, 2021 Ms. Joseph and Ms. Stehura finally connected; Ms. Joseph's priority as always was seeing her child. I, Ms. Joseph also wanted to ensure the court knew all that had been going on with our case and family at the hands of a negligent DCFS and was ensured this WOULD be addressed. The first thing we wanted to address was visitation and requesting a change in order to unmonitored visits as monitored were unnecessary.

17. Ms. Joseph did not know where her child was and asked to be provided that information immediately In which Ms. Stehura stated, "I'm your attorney and I don't even know where your kid is and that's unacceptable" Unacceptable indeed. Every moment of this has been unacceptable.

18. As previously stated, CSW Cristina Pinedo called and texted on July 9, 2021 after being missing since March without any formal notification of said leave of absence. Ms. Joseph brought attention to CSW Pinedo that she had not been able to connect with her child and had been continuously denied access

21CCJP00852A

to her son in any manner. CSW Pinedo stated via text message that CSW Britney provided me with information previously insinuating Ms. Joseph wasn't being truthful. **(Exhibit C, F)** CSW Britney provided a PHONE only visitation schedule via certified mail on May 28, 2021. This did not include physical visitation, virtual, or the phone number to the new location of the minor. This included times, and the monitor name of Summer Thomas. A short time later the same day CSW sent a text message with a new phone number and times. On July 16, 2021 CSW Pinedo sent via email a newly updated visitation and phone visitation schedule (this did not include virtual). **(Exhibit F)**

19. I immediately addressed the need to include virtual visitation and further addressed that the court ordered visitation was 3x3 and the schedule she provided was 2 days a week. Furthermore, the phone calls were scheduled 3x a week when they were previously 7. This comes months after the initial court visitation order and months of being denied visitation and access to minor and I was provided with an even more limited and restrictive visitation schedule. I addressed these discrepancies in an email to CSW and Cristina replied "Ms. Joseph needs to get her own monitor because I don't have the time to supervise 3x a week". In a documented email, CSW Cristina stated She would NOT be following the court order regarding visitation. In order to ensure the visitation with her child, Ms. Joseph kept her battles to a minimum and decided to address them with her attorney in which she did.

20. July 16, 2021 Mother called during scheduled time to her son with the number provided by CSW Cristina. Yuko Nagle, (Paternal Grandmother) texted at 5:08pm "Not here, playing" In which mother politely responded via text at 5:10 pm "I have not spoken to my son since June 10 despite clear court orders. Those orders include ensuring my child is available to speak to me. I'm working and have limited time please have my son return my call" at 5:34 pm when a response was not received, Mother once again reached out and texted "I have not heard back, I'm assuming the call will not be taking place, at this point it's a court order violation and will be reported to law enforcement as I'll be left with no choice". At 549pm Yuko Nagle wrote back, "Doesn't wanna talk". Mother responded "I will be notifying law enforcement at 6pm, Thank you". **(G)**

21. At 6pm, Mother contacted LBPD and was connected to an operator who stated, "You haven't seen your son in HOW LONG!?", she told mother it was

9

important to send an officer to complete a welfare check. Not knowing that even existed

Mother was elated to finally have some clarification as to where her son was and his well-being. Shortly after Officer Neveling called Mother stating paternal grandparents had said Mother was not being honest about her interactions with her child and has seen him virtually and physically since her stated time. Officer Neveling gave insight as to what to do in the future. He stated Wrigley looked well and he didn't want to speak to his mom, he doesn't like the phone. Mother stated "I know, neither of us do, and he loves his Mama he's just been alienated" in which the Officers response was in support of Mother's suggestion her child had been alienated. Officer Neveling provided steps to take in the event visitation violations continue in which Ms. Joseph followed those steps and procedures on July 20, 2021. I, Ms. Joseph has every right to demand the right of familial association protected by the US Constitution and upon being infringed upon, the right to reach out to law enforcement in order to enforce and or ensure her child's safety and well-being. I have and reserve every right to ensure my child's safety especially in the event of being separated without physically or visibility seeing her child.  This is written in the report as a negative on Ms. Joseph's part when in fact it's a loving, caring, responsible Mother fighting relentlessly for her child that has been intentionally and willfully separated from her drastically impacting her family and infringing upon her and her childs rights.

**Call Number: 1334, Agency: Long Beach Police Department July 16, 2021 Operator # 11639 Officer: Neveling**

22. July 20, 2021 was to be the very first day Ms. Joseph and minor Wrigley would be seeing one another since February 19, 2021. Ms. Joseph has been a single mother since day 1 and has entirely raised minor alone. Ms. Joseph works from home much of the time which presents the clear picture that mother and child are often together, more than most families. Mother and child, rarely separate, have spent a few days apart in the child's 8 years of life until this traumatic experience. Ripping a child away from his loving family is not only severe child abuse, it's against both Mother and Childs constitutional and unalienable rights. Keeping them apart for such an amount a time is not simply unconstitutional, contempt of court, but it is severe child abuse and intentional infliction of emotional stress to both minor and mother.

Family time is an essential component of the agency's services in maintaining attachment and reducing the child's sense of abandonment yet the agency has intentionally and irrevocably kept mother and child apart ensuring the detachment of

family making it easier to ensure their obvious goal of adoption. Removing a child from The only parent he has truly known is a failure to protect in its own regard and each day children and parents continue to be apart exacerbates existing harms. As humans wired for connection by nature, a child so deeply dependent on his mother suddenly and traumatically separated is extremely alarming for the child's psychological wiring. Minor is a special needs child and was brought to the attention of the department because I, Ms. Joseph, was reaching out for aid and assistance in providing my child all and any necessary services to ensure his mental and emotional stability and in turn was instantly criminalized with fraudulent removal orders and reports. The fact I reached out on my own regard for assistance displays without a doubt neglect was not present. **(b)**

Studies regularly show children who are separated from their main caregiver have increased chances of developing schizophrenia, bipolar disorder, and other psychological illnesses. Minor has been repeatedly diagnosed with a mood disorder since the age of 2, which has been ignored throughout this case. Had this vital information been taken into consideration and or even addressed, child would have not been separated from the Mother and the Department would have held true to their claim of attempting all necessary means to ensure the family is not separated. The Department did not provide the family with one service or even suggestion as to how they can remain together despite stating so in court reports under penalty of perjury. **(Exhibit H)**

After hiring and speaking to many private attorneys for assistance and consultations I was given the information that stating services are not available is extremely rare. In one instance, an LA Dependency attorney I reached out to state in her 19 years of practice she has only seen it 3 times and the circumstances surrounding the case were grotesque. It is evident my child was wrongfully removed.

23. July 20, 2021 Ms. Joseph both excited and nervous, prepared an elaborate picnic for her visit with her son. This visit was not at Heritage Park as stated in the report by CSW Cristina however, Heartwell Park in Long Beach, California. Mom had a teepee style set up with pillows and blankets, chairs and tables, and most importantly, Wrigley's service dog that has been by his side nearly every day of his life until they were traumatically separated. (His dog even accompanied minor at school at times yet it had been nearly 6 months since they've been united.) Mom had ensured she had sunscreen and her first aid kit, tablets with movies, activities, games, and so much more.

Mom made signs that directed minor rights to his family. Ms. Joseph ran right to  her son grabbed him and carried him hugging and

kissing him and holding him. It was amazing. Unfortunately, it wasn't a lengthy visit.  The joy of being reunited only lasted a mere few minutes before Ms. Pinedo asked if I had another party present in which I stated my ADA was virtually accommodating me

**(Exhibit l)**
I informed CSW prior to the visitation that my ADA would be present virtually with more than sufficient time to "approve" said party. Ms. Pinedo responded via text message that a monitor was not necessary as this was about time with my son. In response, I stated I understand, and the ADA will be present and necessary and the accommodations were put through the court.  Ms. Pinedo continuously stated "I do not consent to being recorded" after nearly every call, text, or email. (Throughout our entire case) This is worrisome as it clearly shows the inability to be transparent, or the fear of being captured inaccurately performing necessary job functions or even misrepresenting the department which she has indeed done. I filed these accommodations with the court on July 6, 2021. I am not the responsible counsel for DCFS to notify them of all filings. All American citizens have the right of access to reasonable accommodations. (l)

It had been nearly 6 months of waiting to see one another at the hands of the negligence of DCFS and it ended with abuse, violence, abuse of discretion, intentional infliction of emotional harm, violation of court orders, violation of civil and constitutional rights, stonewalling, and a grotesque display of abuse of power. CSW stated to end the monitor or she would discontinue the visit, Knowing I'm well within my rights I stated just that in which CSW began demanding information regarding disabilities, interestingly enough, this comes from the same CSW's that alleged in previous reports that Mother is incompetent and cannot parent due to mental disabilities. Furthermore, demanding the disclosure of medical information is a HIPAA violation and I reserve and do not waive any rights. I, Ms. Joseph would like to address that on two other occasions with the department I have successfully and knowingly had a monitor present virtually without any issues. **(d)**

CSW continued to argue with Mother eventually grabbing the minor from the ground by the arm forcefully and violently dragging him yards to her vehicle as the toy in his hand broke leaving pieces about the park along the way. Mother jumped up obviously upset as any caring parent would be and demanded they remain put while a peace officer is contacted to further handle the situation. Mother was advised previously to do so and it even states within the Policy and Procedures of DCFS if visitation comes to a point where it's out of hand to immediately call the Police in which, I, Ms. Joseph did. Mother contacted a peace officer and, in the meantime, continued to participate in a wonderful visit with her child. Upon bringing the child back down to their seats, Mother realized the minor was bleeding. Mother in order to ensure the minor didn't get further

upset made a little joke and put a bandaid on the bleeding knowing it was caused by the CSW. Minor appeared to have had the injury for a few days but it was ripped back open by CSW forcibly and violently grabbing the minor. During the scuffle a passerby and witness came up to CSW to ensure everything was safe following what she had seen and heard. Mother, flustered, told her this was a private meeting and the woman removed herself from our space.

CSW remained only feet away from mother and child standing over them in an intimidating manner whilst policy states to give family privacy yet remain within audible and visibility of family. Moments later another CSW appeared in which the mother asked for her information. It was CSW Pineda. I questioned why multiple social workers were necessary. In response, in front of the minor, CSW stated to Mother in a condescending manner, "BECAUSE YOU CANNOT BE ALONE WITH THE CHILD". Mother asked why would be alone and CSW Pinedo stated when law enforcement arrived, she would be "TOO far" to monitor the visit. This is a clear moment of "inappropriateness" as consistently stated by the department itself and displays again an inability to perform with appropriateness in regards to the child's age and to perform in a professional manner. (m)

Moments later, minor asked to use the restroom, I, knowing the social workers would not allow me to accompany the child to restroom and unable to leave the intricate picnic unattended, asked if CSW would accompany the child to the restroom. I wanted to ensure any negative statements in regard to myself accompanying my own child to the restroom were not witnessed by my son by simply asking for the assistance of CSW. While using the restroom the witness that checked on us previously walked by. I, feeling mortified for being rash earlier, stated my apologies for my behavior. The woman began to come over to me while asking if I and my son were alright. This display of kindness and concern caused me to break down into tears as I hesitantly explained the situation to this woman. She stated she felt she had a small grasp of what was going on by witnessing the event and has been hearing an awful lot about government overreach and corruption within the Department of Children and Family services lately. She asked if she could pray for me and my son. We began to pray; Wrigley ran up and joined, holding our hands. The woman offered her personal information with permission to provide this information to law enforcement for questioning.

Her name was Ruby Lee of Long Beach, California. Telephone: 562-388-2288. Once law enforcement arrived, CSW Cristina ran quickly to the female officer in almost an attempt to ensure triangulation of Ms. Joseph establishing the narrative she desired